THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWIN A. JONES, Defendant-Appellant.

Fifth District    No. 5—94—0813

Opinion filed July 10, 1998.

Kathleen T. Zellner and Daniel W. Pisani, both of Kathleen T. Zellner & Associates, of Naperville, for appellant.

Michael Wepsiec, State's Attorney, of Murphysboro (Norbert J. Goetten, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KUEHN delivered the opinion of the court:

Defendant took three wives. They wed into the Islamic faith. Defendant believed that the teachings of the Holy Koran empowered him to beat his wives. So he beat all three of them. Only two survived.

Defendant stands convicted by the circuit court of Jackson County sitting without a jury of first-degree murder, unlawful use of weapons by a felon, and two counts of aggravated battery. He was sentenced to natural-life imprisonment for the murder, 5 years' imprisonment each for the unlawful use of weapons and one count of aggravated battery, and 10 years' imprisonment for the other aggravated battery count. The 5- and 10-year prison sentences were ordered to be served concurrently with one another and to be served consecutively to the natural-life prison sentence. Defendant appeals his convictions and sentences.

Defendant challenges the evidence in support of his first-degree murder conviction. He claims that no rational trier of fact could have found more than involuntary manslaughter on the facts presented. He asks us to reduce the first-degree murder conviction to involuntary manslaughter.

■ We do not retry cases on review. We simply determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985). We will not reverse a guilty verdict unless the evidence, viewed in a light most favorable to the State, is palpably contrary to the result reached. *Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277.

Jeannie Boyd-Jones succumbed to massive injuries sustained as a result of a prolonged beating administered by defendant. Portions of her deep body fat liquified, and the tissue died as a result of the force applied. Over one-third of her blood supply permeated the internal body cavity lost to circulation as a result of the force applied. Her lower torso and shanks were one massive contusion, with no portion of her frame free of visible welts and bruises. Jeannie Boyd-Jones was beaten to death. Of that there can be no dispute.

■ The question is whether the evidence establishes that defendant acted with knowledge that the beatings he inflicted created a strong probability of great bodily harm.

With this element of the State's case at issue, we look first to the instrument used to inflict the beatings. People's exhibit number three was identified by defendant. He admitted that the State's exhibit was the "stick" employed to "discipline" his three wives. There is no question about the weapon used to inflict the wounds that caused death.

The "stick" was 36 inches in length and 2½ inches in diameter. It was only slightly larger in length and slightly smaller in its barrel than the Louisville Slugger employed by Mark McGwire. The trial court characterized it as a cudgel. Over the course of 8½ hours it was applied with full force to various portions of Jeannie's body. At times, defendant would hold it with both hands like a baseball bat and swing for the fences with all the force he could muster. The defendant is 6 feet 2 inches in height and weighs 250 pounds.

Of course, defendant did not swing at Jeannie continuously during the 8½-hour "disciplinary period." Jeannie fell in and out of consciousness, a circumstance that on occasion brought a respite. Defendant had two other wives to address. There was also evidence of certain smoke breaks during the ordeal. On occasion, however, when defendant was not beating his other wives or smoking crack cocaine, he was reviving Jeannie in order to inflict further punishment. At one

point, as Jeannie was about to collapse and pass out, defendant told her to "go ahead and die bitch."

Finally, Jeannie stopped breathing. Defendant rushed to her side and attempted CPR. He prayed for her to live. His prayers were to no avail.

The trial court noted, in observing the size of the defendant, the instrument he employed in the beatings, and the injuries this deadly combination produced, that "this was nothing less than torture." The trial court aptly found that the 8½-hour process literally reduced Jeannie's body tissue to a "bloody pulp."

Defendant insisted that Jeannie's clothing obscured her horrific bruising from his view. He disavowed knowledge of the harm he was producing. On appeal, defendant points to the efforts he made to save Jeannie and to the pleas for divine intervention and argues that he did not possess the requisite state of mind for murder.

Defendant may not have actually intended to kill Jeannie. Despite his comment to her, he may not have actually known that his acts would produce death. Notwithstanding, based on his actions and words, it was decidedly reasonable for the trial court to conclude that defendant knew that his acts created a strong probability of great bodily harm. Indeed, it is unimaginable that a man of size and strength could take an instrument that resembled a baseball bat, employ it with full force to the body of a young woman, persist in the activity until it produced unconsciousness, and not expect to produce great bodily harm. We are at a loss to understand what defendant was thinking during the sound and fury of his attacks with such a weapon, particularly when he saw his wife succumb and lapse into unconsciousness.

The evidence, when viewed in a light most favorable to the prosecution, supports the reasonableness of the trial court's finding that the defendant committed first-degree murder.

■ Next, defendant challenges his court-appointed lawyer's performance. He inveighs against counsel for the failure to procure an amir or sheik to opine about his religious faith and its sanction of wife-beating. The record reflects that counsel unsuccessfully searched for such an expert. It also reflects a grave misapplication of any Islamic license for his conduct.

We seriously doubt that anyone knowledgeable on Islamic teachings would have proved helpful to this defense. Had such an expert been found, had he explained the righteousness of defendant's conduct or merely explained how defendant may have believed that his actions conformed to religious teachings, the expert would not have changed the outcome. The sovereign State of Illinois has a long-standing rule

of law that prohibits the engaged-in conduct. This society will not abide defendant's actions regardless of the religious beliefs that may have motivated them. If a religion sanctions conduct that can form the basis for murder, and a practitioner engages in such conduct and kills someone, that practitioner need be prepared to speak to God from prison.

Since defendant suffered no prejudice by virtue of an Islamic expert's absence, he was not deprived of the effective assistance of counsel under the sixth amendment. See *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); *People v. Albanese*, 104 Ill. 2d 504, 473 N.E.2d 1246 (1984).

■ Next, defendant raises the excessiveness of a natural-life prison term. Defendant contends that the natural-life prison sentence is an abuse of discretion, and he points to his lack of a substantial criminal record, his remorse soon after the beating ended, his employment record, and his attendance of a university in an effort to show that he is not beyond rehabilitation.

A trial court may impose a natural-life prison sentence for first-degree murder where the "court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." 730 ILCS 5/5—8—1(a)(1)(b) (West 1992). Various courts have defined brutal and heinous. See *People v. La Pointe*, 88 Ill. 2d 482, 501, 431 N.E.2d 344, 353 (1981). We think the statutory terminology is rather self-evident and easily applicable here.

In evaluating the brutality and heinousness of a crime, the entire spectrum of facts surrounding the given incident must be analyzed and evaluated. *People v. Hartzol*, 222 Ill. App. 3d 631, 651, 584 N.E.2d 291, 306 (1991). The brutal and heinous behavior is found not in the defendant's state of mind but, rather, from the nature of the offense. *Hartzol*, 222 Ill. App. 3d at 651, 584 N.E.2d at 306. The imposition of a natural-life prison sentence rests within the trial court's discretion and will not be disturbed on review absent an abuse of that discretion. *Hartzol*, 222 Ill. App. 3d at 651, 584 N.E.2d at 306.

We cannot find an abuse of discretion in the imposition of a natural-life prison sentence for this crime. This crime takes domestic violence and domestic murder to a new height. Hour upon hour, for over eight, defendant, a man of great size and strength, pummeled three defenseless women.

Defendant might have achieved his goal to inflict pain upon these women by adopting the manner employed by most wife beaters. Apparently, slapping them, striking them with his fists, or simply throwing them about would not do. He needed a cudgel the size of a baseball bat. The injuries inflicted with it evidence that he did not tread lightly with its use.

Defendant was not content to allow nature to save Jeannie's life. He callously revived Jeannie from unconsciousness to heap injury upon injury, hour after hour, until her body could stand no more and she stopped breathing. Defendant reduced his wife's body tissue to a "bloody pulp." We cannot quarrel with the trial court's view that this murder was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty.

Although a sentencing judge must consider rehabilitative potential, he need not give greater weight to rehabilitation than to the seriousness of the offense. *People v. Reid,* 160 Ill. App. 3d 491, 493, 513 N.E.2d 517, 518 (1987). Rehabilitation does not outweigh other considerations that are persuasive factors warranting a severe sentence. *Reid,* 160 Ill. App. 3d at 493, 513 N.E.2d at 518. Natural-life imprisonment is reserved for a class of murderer who demonstrates by his conduct a capacity for particularly brutal and heinous behavior indicative of wanton cruelty. It is a sentence reasonably designed to remedy the evil of such conduct. Society deserves protection from it. *La Pointe,* 88 Ill. 2d at 501, 431 N.E.2d at 352-53.

Defendant really did not show rehabilitative potential. In allocution, his regret rang hollow as he explained that his reading of the Koran permitted the administration of 180 lashes. Defendant blamed his wife Lisa and her failure as a Muslim as the reason for the beatings. He castigated Jeannie's parents for disowning her after she married a black man. He viewed the trial and his wife's death as a racial issue. A fair reading of his comments demonstrates a total lack of remorse over the death he caused and a total lack of empathy for the feelings of the survivors.

Defendant had prior felony convictions. He kept handguns and used cocaine. This does not speak to a potential for restoration to useful citizenship but rather speaks to a mind-set that society's laws are simply there to be broken.

■ Finally, defendant challenges the extended-term 10-year prison sentence because it is not the most serious class of offense for which he stands convicted. See 730 ILCS 5/5—8—2(a) (West 1992); *People v. Jordan,* 103 Ill. 2d 192, 206, 469 N.E.2d 569, 575 (1984). A sentence of natural-life imprisonment cannot be "extended" pursuant to section 5—8—2 of the Unified Code of Corrections. *People v. Young,* 124 Ill. 2d 147, 162-63, 529 N.E.2d 497, 504 (1988). Therefore, because extended-term provisions cannot apply to defendant's natural-life sentence for murder, the extended-term provisions can properly be applied to the next most serious offense of which defendant was convicted—aggravated battery. *Young,* 124 Ill. 2d at 165-66, 529 N.E.2d at 505-06. Our supreme court recently reaffirmed *Young. People v. Terry,* 183 Ill. 2d 298 (1998).

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HOPKINS and GOLDENHERSH, JJ., concur.