THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY JOE ADAMS, Defendant-Appellant.

Fifth District   No. 5—00—0145

Opinion filed August 13, 2002.

172

KUEHN, J., specially concurring.

Larry Joe Adams, of Menard, appellant *pro se.*

William Haine, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris, and Patrick D. Daly, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

After a jury trial, Larry Joe Adams (defendant) was convicted of armed robbery and murder in connection with the shooting death of Eugene Ponder on May 10, 1982, in Alton, Illinois. Defendant was sentenced to death for the murder and to 60 years' imprisonment for the armed robbery. On direct appeal, defendant's sentence of death was vacated because of improper comments made at both stages of the sentencing hearing. *People v. Adams*, 109 Ill. 2d 102, 485 N.E.2d 339 (1985). On remand, the circuit court of Madison County imposed a sentence of life imprisonment. The court found that the murder had occurred during the course of an armed robbery and was "brutal and *** indicative *** of wanton cruelty." Defendant subsequently filed a petition for postconviction relief, which was dismissed. Defendant next appealed the dismissal of his petition. We reversed the dismissal after

we found that defendant had made a substantial showing that his counsel on direct appeal had provided him ineffective assistance in failing to argue that defendant had been arrested without probable cause and in failing to urge that his police statement was the product of his unlawful arrest. *People v. Adams*, No. 5—95—0549 (June 2, 1998) (unpublished order pursuant to Supreme Court Rule 23 (166 Ill. 2d R. 23)).

While defendant's postconviction appeal was pending, some 11 years after being resentenced to life imprisonment, defendant filed a motion for fingerprint testing using techniques not available at the time of the trial. Apparently, eight fingerprints found at the murder scene remained unidentified. The circuit court ordered the Illinois State Police to search its files for fingerprints collected from Ponder's drug store. The Illinois State Police informed the court that it had returned the requested fingerprints to the Alton police department "after termination of this cause." The Alton police department subsequently informed the court that the unidentified prints no longer existed. The court denied defendant's motion for fingerprint testing.

Defendant filed a motion for an evidentiary hearing into the circumstances attending the loss or destruction of the fingerprints. The court denied defendant's motion but did hold an evidentiary hearing on the questions of whether the police had probable cause to arrest defendant and whether defendant had received the effective assistance of counsel on direct appeal. The court ruled against defendant, and defendant now appeals these rulings *pro se*. We affirm.

■ Defendant first challenges the trial court's findings that there was sufficient probable cause to justify his arrest and that he was not denied the effective assistance of appellate counsel. Determinations made by a postconviction court following an evidentiary hearing will not be disturbed on review unless they are manifestly erroneous. *People v. Montgomery*, 192 Ill. 2d 642, 654, 736 N.E.2d 1025, 1032 (2000). We cannot say that the trial court's rulings are manifestly erroneous in this instance.

■ In order to succeed on a claim of ineffective assistance of appellate counsel, defendant must show that counsel's failure to raise an issue on direct appeal was objectively unreasonable and that, but for this failure, a reasonable probability exists that defendant's conviction or sentence would have been reversed. *People v. Wilson*, 191 Ill. 2d 363, 380, 732 N.E.2d 498, 507 (2000). Evidence at the postconviction hearing demonstrated that defendant's arrest was not without the benefit of probable cause, and therefore, neither trial counsel nor appellate counsel rendered ineffective assistance.

■ Police may make a warrantless arrest, but only if they have

knowledge which would lead a reasonable person to believe that a crime has occurred and that it has been committed by that defendant. *People v. Robinson*, 167 Ill. 2d 397, 405, 657 N.E.2d 1020, 1025 (1995); *People v. Dizon*, 297 Ill. App. 3d 880, 885, 697 N.E.2d 780, 784 (1998). Two witnesses placed defendant at the victim's store at a time just prior to the murder. A third witness also identified defendant running from the shop carrying a white paper bag within the time frame in which the murder occurred. An informant who had spoken to defendant prior to the murder told the police that defendant was trying to obtain a gun to rob a pharmacy for certain drugs, drugs which were later found missing from Ponder's store. Collectively, the evidence demonstrated probable cause and, as a result, the lack of any reason for suppressing his postarrest statements. Defendant did not satisfy his burden of showing a constitutional infirmity at the trial or on appeal. The trial court, therefore, properly denied defendant's postconviction petition.

■ Defendant next contends on appeal that he was entitled to fingerprint testing but was denied that right by the destruction of the unidentified fingerprint lifts recovered from the murder scene. Defendant further asserts that the trial court engaged in a private, off-the-record investigation of the missing fingerprints and then denied him a hearing to investigate the loss.

Some 18 years after the victim was murdered and 11 years after defendant was resentenced to life imprisonment, defendant filed a motion for fingerprint testing not available at the time of his trial. The State opposed the motion, contending that the testing did not have the potential to produce new, noncumulative evidence materially relevant to defendant's assertion of innocence. The State argued that the jury heard extensive evidence and arguments about the unidentified fingerprints before concluding that defendant was guilty beyond a reasonable doubt. While the matter was under advisement, the trial court issued an order to the Illinois State Police Bureau of Scientific Services to search its files for the fingerprint lifts collected from the crime scene. The crime lab notified the court that the fingerprint lifts had been returned to the Alton police department. The Alton police department subsequently informed the court that the unidentified prints no longer existed. The trial court therefore denied defendant's motion because defendant failed to meet the requirement that the evidence to be tested was subjected to a proper chain of custody (see 725 ILCS 5/116—3 (West 1998)). The trial court further denied defendant's request for an evidentiary hearing to ferret out the reason the fingerprints were missing. The court specifically noted that there

was no order requiring the police to keep the evidence,[1] and it further noted that the existence of the unidentified fingerprints at the murder scene was argued extensively at the trial.

We find no reversible error in this instance. Initially, we fail to see how defendant was prejudiced by the court's investigation of the location and existence of the fingerprint lifts. Defendant could have conducted the same investigation to verify any of the court's information. More importantly, none of the information obtained by the court was used to reach conclusions on defendant's guilt or innocence (cf. *People v. Rowjee*, 308 Ill. App. 3d 179, 719 N.E.2d 255 (1999)). Second, there was no court order requiring the preservation of the fingerprints, and there certainly appeared to be no evidentiary need for retaining them. A mere showing of negligence by the police in losing evidence, if we can even say that was the case here, is insufficient to prove any due process violation. *People v. Danielly*, 274 Ill. App. 3d 358, 363-64, 653 N.E.2d 866, 869-70 (1995); cf. *People v. Hobley*, 182 Ill. 2d 404, 439-41, 696 N.E.2d 313, 331-32 (1998). Additionally, the fact that unidentified fingerprints were found at the crime scene was argued extensively at the trial. There was simply no likelihood that there was a potential to produce new, noncumulative evidence materially relevant to an assertion of actual innocence. As we noted in *People v. Urioste*, 316 Ill. App. 3d 307, 317-18, 736 N.E.2d 706, 715 (2000), "Our legislature did not intend to give convicted defendants free rein to claim innocence in order to test, or retest, evidence tangential to the core evidence of guilt." The evidence was unrebutted that defendant was alone with the victim at a time just preceding the murder. It is gross speculation to suggest that after defendant left the store, an "unidentified" killer suddenly appeared and murdered the victim, especially when the unidentified fingerprints could have been impressed at any time in the past. Defendant was not entitled to a hearing on the matter of the missing fingerprints, and the trial court properly denied defendant's motions.

■ For his last point, raised for the first time on the appeal from the denial of his postconviction petition, defendant argues that his sentence of life imprisonment is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). Several recent cases have already answered this question—defendants who have exhausted their direct appeal rights prior to the issuance of

---

[1]Effective January 1, 2001, evidence used in a prosecution for murder is to be preserved permanently, subject to a continuous chain of custody, and only by means of an evidentiary hearing is a custodial agency permitted to destroy evidence. See 725 ILCS 5/116—4 (West Supp. 2001).

the *Apprendi* decision may not, on collateral review, challenge their sentences on the basis of that decision. See, *e.g.*, *People v. McGee*, 328 Ill. App. 3d 930 (2002); *People v. Scullark*, 325 Ill. App. 3d 876, 759 N.E.2d 565 (2001); *People v. Helton*, 321 Ill. App. 3d 420, 749 N.E.2d 1007 (2001); *People v. Kizer*, 318 Ill. App. 3d 238, 741 N.E.2d 1103 (2000). Until our supreme court tells us differently, we see no reason not to follow these well-reasoned decisions. We recognize that another panel from this court has reached a different conclusion (see *People v. Rush*, 322 Ill. App. 3d 1014, 757 N.E.2d 88 (2001)); we choose to follow, however, the line of cases culminating in the more recent pronouncement. We likewise find no merit to defendant's contention that we should vacate his extended-term sentence for armed robbery. Because extended-term provisions do not apply to natural-life sentences for murder, extended-term provisions can properly be applied to the next most serious offense of which the defendant was convicted, in this instance armed robbery. *People v. Terry*, 183 Ill. 2d 298, 305, 700 N.E.2d 992, 995-96 (1998); *People v. Jones*, 297 Ill. App. 3d 688, 693, 697 N.E.2d 457, 461 (1998). Consequently, we also affirm defendant's extended-term sentence for armed robbery.

For the aforementioned reasons, we affirm the judgment of the circuit court of Madison County.

Affirmed.

CHAPMAN, Melissa, J., concurs.

JUSTICE KUEHN, specially concurring:

Since a jury found beyond a reasonable doubt that facts necessary to expose this defendant to the punishment imposed did occur, I do not believe that his sentence is unconstitutional. See *People v. Ford*, 198 Ill. 2d 68, 761 N.E.2d 735 (2001). However, I do believe that he should be able to raise that question, even though the judgment that imposed that punishment has already been reviewed and affirmed.

I write separately to side with those of my colleagues who have held that no person should be held in prison, without recourse, for the commission of a criminal offense that was neither charged nor proven to the satisfaction of 12 fellow citizens. See *People v. Beachem*, 317 Ill. App. 3d 693, 740 N.E.2d 389 (2000); *People v. Rush*, 322 Ill. App. 3d 1014, 757 N.E.2d 88 (2001). While I am mindful of the State's interest in finality, we confront a new constitutional rule grounded in principles so basic to the concept of ordered liberty that everyone should be afforded its protection.

When the United States Supreme Court established the limited

path to the collateral review of a new constitutional rule, it held that prisoners could avail themselves of the rule's protection only if the rule required the observance of procedures implicit in the concept of ordered liberty. *Teague v. Lane*, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989). I cannot imagine what kind of new constitutional rule could fit within this exception if the rule set forth in *Apprendi* does not meet its criteria. See *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). If our professed goal is justice and that goal must be reached through a process that ensures fundamental fairness to everyone, we had better pause at the thought of punishing people for crimes that were never charged and for misconduct that was never found to exist by a method we deem constitutionally fair and sound. What kind of procedures implicitly form our view of ordered liberty if we can allow for punishment without charge or proof?

I would hold that those people being punished under circumstances that offend the rule set forth in *Apprendi* should be afforded the opportunity to pursue relief.

Accordingly, I specially concur.