THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD SCHUTZ, Defendant-Appellant.

First District (3rd Division)    No. 1—00—3494

Opinion filed October 29, 2003.

Michael J. Pelletier and Maria A. Harrigan, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Joan F. Frazier, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HALL delivered the opinion of the court:

In 1970, the defendant, Richard Schutz, was convicted of the murder of Cheryl Littlejohn and sentenced to an indeterminate term of 35 to 100 years' imprisonment. His conviction and sentence were affirmed on appeal. See *People v. Schutz*, 8 Ill. App. 3d 827, 291 N.E.2d 194 (1972). The defendant was released from prison after serving 14 years of his sentence.

On September 14, 1999, the defendant filed a petition pursuant to section 116—3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116—3 (West 1998)) seeking to have deoxyribonucleic acid (DNA) testing performed on certain physical evidence in his murder case.

On August 29, 2000, the circuit court dismissed the petition after being advised by the State that the evidence the defendant sought to have tested had been destroyed.

The defendant appeals, contending that the circuit court erred when it dismissed his petition without first determining if the State had destroyed the evidence in bad faith.

It is not disputed that forensic DNA testing was not available at the time of the defendant's trial in 1970. Effective January 1, 1998, the General Assembly enacted section 116—3, which explains the process defendants must follow to obtain fingerprint or forensic testing not available at trial regarding actual innocence. Pub. Act 90—141, § 5, eff. January 1, 1998 (adding 725 ILCS 5/116—3).

Section 116—3 provides in pertinent part as follows:

"(a) A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case for the performance of fingerprint or forensic DNA testing on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial. Reasonable notice of the motion shall be served upon the State.

(b) The defendant must present a prima facie case that:

(1) identity was the issue in the trial which resulted in his or her conviction; and

(2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect." 725 ILCS 5/116—3 (West 1998).

In his *pro se* motion for forensic testing, the defendant alleged that the Cook County sheriff's police gathered the physical evidence and submitted it to the Chicago police department for analysis. At the defendant's bench trial, the State introduced evidence, including blood and sperm samples. Members of the Chicago police department testified as to a number of items of physical evidence, such as oral, anal, vaginal and rectal swabs which were positive for sperm and fingernail clippings from the victim.

The defendant then alleged that the policy of the Chicago police department was to retain all evidence related to murder investigations permanently. He further alleged that he had been informed by the records division of the Chicago police department that a box containing reports and photographs pertaining to his case had been located and that the physical evidence would have been retained by the Chicago police department crime laboratory.

Finally, the defendant alleged that it was later discovered that the defendant's blood type was not found at the crime scene. The defendant did acknowledge that he had given oral and written statements to the police, which he later recanted.

## Analysis

### I. Standard of Review

■ A trial court's ruling on a motion brought pursuant to section 116—3 is reviewed *de novo*. *People v. Henderson*, 343 Ill. App. 3d 1108, 1115 (2003).

### II. Discussion

#### A. Waiver

■ The State points out that the defendant never raised his claim of bad faith in the circuit court and, therefore, it is waived. However, this court is not bound by the principle of waiver, and in the interest of a just result, we may elect to address a waived issue. *Keefe-Shea Joint Venture v. City of Evanston*, 332 Ill. App. 3d 163, 170, 773 N.E.2d 1155, 1161 (2002). Therefore, we will not reject the defendant's claim on the basis of waiver.

#### B. Incarceration Requirement

The State then argues that section 116—3 does not apply to defendants who have already served their sentences. The State

maintains that the legislature's use of the term "actual innocence" in the caption of section 116—3 indicates that the legislature intended that DNA testing be afforded only to those defendants who remain deprived of their liberty.

The State points out that the phrase "actual innocence" originated in *People v. Washington*, 171 Ill. 2d 475, 665 N.E.2d 1330 (1996), wherein our supreme court held that a claim of "actual innocence" was cognizable under Illinois constitutional jurisprudence and therefore could be asserted in a postconviction petition.

■ The State submits that the *Washington* court's statement that "no person *** should be deprived of life or liberty given compelling evidence of actual innocence" indicates that a claim of "actual innocence" is tied to a deprivation of liberty. *Washington*, 171 Ill. 2d at 489, 665 N.E.2d at 1336-37. The State then reasons that the legislature's use of the term "actual innocence" in section 116—3, coming after the decision in *Washington*, suggests that the legislature intended that DNA testing be available only to those defendants still incarcerated. See *Burrell v. Southern Truss*, 176 Ill. 2d 171, 176, 679 N.E.2d 1230, 1233 (1997) (" 'Where statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law.' [Citation.]"). The State also relies on the statutory construction principle that a statute should be construed so that no term is rendered superfluous or meaningless. *People v. Maggette*, 195 Ill. 2d 336, 350, 747 N.E.2d 339, 347 (2001). The State insists that, "[U]nless the term 'actual innocence' refers to the concept defined by the Court in *Washington*, use of the term 'actual' to modify 'innocence' is completely superfluous."

■ The State's argument ignores the basic principle of statutory construction. The cardinal principle of statutory construction is to ascertain and give effect to the intention of the legislature. *People v. Savory*, 197 Ill. 2d 203, 212, 756 N.E.2d 804, 810 (2001). The language used by the legislature is the best indicator of legislative intent, and thus a court's inquiry appropriately begins with the statutory text. *Savory*, 197 Ill. 2d at 212-13, 756 N.E.2d at 810. The statutory language must be given its plain and ordinary meaning, and when the terms used by the legislature are clear and unambiguous, it is not necessary to resort to other aids of construction. *Savory*, 197 Ill. 2d at 213, 756 N.E.2d at 213.

■ The plain language of section 116—3 does not require that a defendant be incarcerated in order to seek forensic testing. See *Savory*, 197 Ill. 2d at 213, 756 N.E.2d at 811 (the supreme court concluded that "an examination of the language in section 116—3 reveals that it does not contain the restriction the appellate court imposed on it").

We are unpersuaded by the State's argument that, because the caption to section 116—3 uses the term "actual innocence," the legislature had the liberty concerns expressed by the *Washington* court in mind when it drafted section 116—3.

In *Washington*, the court was dealing with a postconviction petition. The statutory schemes for postconviction relief and forensic DNA testing are completely different. *People v. Jones*, 334 Ill. App. 3d 61, 65, 777 N.E.2d 449, 453 (2002). The Post-Conviction Hearing Act (the Act) specifically provides that postconviction relief is available to persons imprisoned in the penitentiary. 725 ILCS 5/122—1 (West 1998); but see *People v. Luna*, 211 Ill. App. 3d 390, 570 N.E.2d 404 (1991) (the defendant, facing deportation based on his guilty plea, could seek relief under the Post-Conviction Hearing Act even though he had completed his probation, given the severity of the consequences of deportation). As we noted above, the plain language of section 116—3 does not limit it to incarcerated defendants. Moreover, the Act also sets forth time limitations for filing postconviction petitions. 725 ILCS 5/122—1(c) (West 1998). In contrast, section 116—3 has no time limitations for motions brought pursuant to it. *People v. Rokita*, 316 Ill. App. 3d 292, 303, 736 N.E.2d 205, 213 (2000).

In its opinion, the *Washington* court first concluded that procedural due process required that a claim of actual innocence by a *convicted* person be recognized and then that "[i]mprisonment of the innocent would *also* be so conscience shocking as to trigger operation of substantive due process. [Citation.]" (Emphasis added.) *Washington*, 171 Ill. 2d at 487-88, 665 N.E.2d at 1336. The *Washington* court's use of the term "convicted" as opposed to "incarcerated" persuades us that the legislature's decision to use the term "actual innocence" in section 116—3, if influenced by the decision in *Washington*, was not based on a denial of liberty but on the conviction of an innocent person.

Finally, the clear purpose of section 116—3 was to provide *convicted* defendants with a means by which to establish actual innocence through advances in forensic technology. *People v. Urioste*, 316 Ill. App. 3d 307, 313, 736 N.E.2d 706, 712 (2000). The evidence sought to be tested must be "materially relevant" to the defendant's claim of actual innocence. *Savory*, 197 Ill. 2d at 214, 756 N.E.2d at 811. The claim of "actual innocence" is related to the relevance of the evidence to be tested, not to the fact of a defendant's continued incarceration.

*Rokita* further supports the conclusion that the legislature did not intend to limit section 116—3 to incarcerated defendants. The State acknowledges *Rokita* but argues that *Rokita* involved a different issue.

In *Rokita*, the State argued that a request for forensic testing was properly considered only in connection with a timely postconviction

petition or one that was excusably late, citing *People v. Dunn*, 306 Ill. App. 3d 75, 713 N.E.2d 568 (1999) (although the court upheld the dismissal of Dunn's postconviction petition, it reviewed his request for genetic testing under the fundamental fairness rule and remanded the case to determine if Dunn had made out a *prima facie* case for testing).

The *Rokita* court rejected the State's argument, stating as follows:
"Contrary to the State's assertion, nothing in *Dunn* implies that the proper time for filing a section 116—3 motion is during a postconviction review. As noted above, when interpreting a statute, courts should give effect to the intent of the legislature, and that intent is best ascertained from the language of the statute itself. There is no language in section 116—3 indicating any legislative intent to impose a time limit for filing a motion for forensic testing. Had the legislature wished to impose a time limit on the filing of a section 116—3 motion, it could easily have done so. It is not the prerogative of this court to read into the statute limitations that the legislature chose not to include. Moreover, were we to go beyond the clear and unambiguous language of the statute, the legislative history of section 116—3 clearly demonstrates that the legislature did not intend to impose a time limit for filing a motion. [Citations.][1] " *Rokita*, 316 Ill. App. 3d at 303, 736 N.E.2d at 213.
See also *People v. Barksdale*, 327 Ill. App. 3d 422, 762 N.E.2d 669 (2001) (citing *Rokita*, the court noted that even if a postconviction petition were untimely filed, a defendant could file a petition for relief directly under section 116—3).

As we stated above, section 116—3 contains no language limiting its availability to incarcerated defendants. If the legislature had intended section 116—3 to apply only to incarcerated defendants, it clearly could have done so. Section 116—3 simply does not contain the restriction the State wishes to impose on it. Compare *Savory*, 197 Ill. 2d at 214, 756 N.E.2d at 811 (supreme court rejected the State's argument that section 116—3 was restricted to testing of evidence that would completely exonerate a defendant).

We conclude that relief under section 116—3 is not limited to incarcerated defendants but is also available to defendants who have completed their sentences and who are no longer incarcerated.

## C. Bad Faith

Initially, we note that section 116—3 requires that the defendant present a *prima facie* case that the evidence sought to be tested has

---

[1] 90th Ill. Gen. Assem., House Proceedings, April 15, 1997, at 1-20; 90th Ill. Gen. Assem., Senate Proceedings, May 9, 1997, at 106-07.

been subject to a chain of custody sufficient to establish its reliability. 725 ILCS 116—3(b)(2) (West 1998).

In this case, the defendant alleged that evidence had been gathered by the Cook County sheriff's department, turned over for testing to the Chicago police department and introduced at trial. The defendant concludes that since it was the policy of the Chicago police department to retain all evidence related to murder investigations, the evidence should still be in the custody of the Chicago police.

In *People v. Johnson*, 205 Ill. 2d 381, 793 N.E.2d 591 (2002), our supreme court held that a defendant had alleged a *prima facie* showing of a sufficient chain of custody. Although the defendant did not know where the evidence was located, the court acknowledged that the location of the evidence would not have been available to the defendant. However, the evidence the defendant sought to have tested and which had been admitted at trial would have remained in the custody of the circuit court clerk after the defendant's conviction. See *Johnson*, 205 Ill. 2d at 394, 793 N.E.2d at 600; but see *Jones*, 334 Ill. App. 3d at 65-66, 777 N.E.2d at 453 (the defendant's request for evidence did not establish that the evidence was ever collected, transported or stored, distinguishing *Johnson*).

■ The purpose of the chain of custody requirement is to ensure the reliability of the evidence to be tested. However, where, as in this case, the evidence to be tested has been destroyed, relief under section 116—3 is no longer available to the defendant. See *Urioste*, 316 Ill. App. 3d at 311, 736 N.E.2d at 710 (court could affirm dismissal of a section 116—3 motion where the defendant alleged only that it was customary for the police to preserve blood samples, and there was nothing in the record from which to conclude that the evidence still existed, much less that a proper chain of custody had preserved its integrity).

Nonetheless, the defendant contends that he is entitled to a hearing to determine if the evidence he sought to be tested was destroyed in bad faith, relying on *Barksdale*.

In *Barksdale*, the defendant filed a postconviction petition seeking testing of certain physical evidence pursuant to section 116—3. The circuit court summarily denied the petition. The defendant appealed. In its brief on appeal, the State admitted that the evidence had been destroyed.

The reviewing court held that in order to show a due process violation, the defendant was required to show that the State acted in bad faith where the evidence that the defendant was seeking to have tested has been destroyed. Because the defendant had attached to his petition an order requiring the preservation of the evidence entered at

the time of his conviction, the defendant had made a sufficient showing of a meritorious constitutional claim to advance to the second stage of the postconviction proceedings. *Barksdale*, 327 Ill. App. 3d at 440-41, 762 N.E.2d at 684.

Contrary to the defendant's argument, the *Barksdale* court did not hold that a defendant was entitled to a bad-faith hearing just because the evidence had been destroyed. Rather, the court held that the defendant's allegation that the evidence was destroyed, despite an order for its preservation, stated the gist of a constitutional violation. In the present case, the defendant alleged only that it was the "policy" of the Chicago police department to retain such evidence, not a requirement.[2, 3]

In *People v. Adams*, 333 Ill. App. 3d 171, 775 N.E.2d 197 (2002), a somewhat similar situation to the one before us arose. While Mr. Adams's petition for postconviction relief was pending, he filed a motion for fingerprint testing using techniques not available at the time of his trial. After the trial court was informed that the fingerprint evidence no longer existed, the court denied Mr. Adams's motion for the testing on the basis that he failed to meet the chain of custody requirement of section 116—3. The trial court also denied Mr. Adams's motion for an evidentiary hearing to determine the reason the fingerprint evidence was missing.

On appeal, the appellate court affirmed the trial court's order.[4] With regard to the chain of custody, the court stated as follows:

> "Second, there was no court order requiring the preservation of the fingerprints, and there certainly appeared to be no evidentiary need for retaining them. A mere showing of negligence by the police

---

[2]Under section 116—4, enacted January 1, 2001, evidence in a murder case was to be permanently retained, although the State could move to have it disposed of upon notice to the defendant. Pub. Act 91—871, eff. January 1, 2001 (adding 725 ILCS 116—4). Subsequently, section 116—4 was amended to require that in murder cases, other than where the death penalty was imposed, the evidence was to be retained until after the defendant had served his sentence, including any mandatory supervised release period or January 1, 2006, whichever was later. Pub. Act. 92—459, § 10, eff. August 22, 2001 (amending 725 ILCS 5/116—4).

[3]The State points out that in *People v. Campbell*, 252 Ill. App. 3d 624, 630, 625 N.E.2d 130, 134 (1993), the court noted that pursuant to police regulations, all inventory items in felony cases are destroyed after three years unless the State's Attorney sends a letter requesting that the evidence be preserved for trial.

[4]Justice Kuehn filed a special concurrence on an unrelated issue in the case.

in losing evidence, if we can even say that was the case here, is insufficient to prove any due process violation. [Citations.]' " *Adams*, 333 Ill. App. 3d at 175, 775 N.E.2d at 201.

■ In the present case, the defendant was tried over 30 years ago. At the time he filed his petition, the defendant did not know whether the evidence was even in existence after so many years. Unlike the defendant in *Barksdale*, the defendant here does not contend that at the time of his conviction, an order was entered requiring that the evidence he now seeks for testing be retained. *Barksdale* teaches that it is the defendant's burden to establish that the evidence was destroyed in bad faith. In this case, after it was revealed that the evidence did not exist any more, the defendant did not move to amend his petition with any allegations that the evidence he sought to be tested had been destroyed in bad faith.

In summary, we hold that relief under section 116—3 is available to both defendants presently incarcerated and to defendants who have completed their sentences. We further hold that the fact that the evidence sought to be tested has been destroyed does not singularly entitle a defendant to a hearing as to whether the evidence was destroyed in bad faith. In the absence of any allegations of bad faith in connection with the destruction of the evidence in this case, the defendant was not denied due process, and his motion for DNA testing was properly denied for lack of *prima facie* evidence of a chain of custody.

In light of our determination in this case, we need not address the defendant's argument that the evidence was materially relevant to his claim of actual innocence.

The judgment of the circuit court is affirmed.

HOFFMAN, P.J., and KARNEZIS, J., concur.