NOTICE
Decision filed 03/12/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 170301-U

NO. 5-17-0301

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 94-CF-156 |
| | ) | |
| EDWIN A. JONES, | ) | Honorable |
| | ) | William G. Schwartz, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Barberis and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court did not err in denying the defendant leave to file a successive postconviction petition, and any argument to the contrary would lack merit, and therefore the defendant's appointed appellate attorney is granted leave to withdraw as counsel, and the judgment of the circuit court is affirmed.

¶ 2    The defendant, Edwin A. Jones, is serving a sentence of natural-life imprisonment for the first degree murder of his wife, Jeannie Boyd-Jones. He appeals from the circuit court's order denying his motion for leave to file a successive petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)). The petition would have been the defendant's third postconviction petition. The instant appeal is the defendant's sixth appeal to this court in this cause. The defendant's appointed attorney in this appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit, and on that basis it has

1

filed with this court a motion to withdraw as counsel, along with a memorandum of law in support thereof. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD has served the defendant with a copy of its *Finley* motion and memorandum, and the defendant has filed with this court a written response to the *Finley* motion. This court has examined OSAD's *Finley* motion and memorandum, the defendant's written response thereto, and the entire record on appeal, and has determined that this appeal does indeed lack merit.

¶ 3                                              BACKGROUND

¶ 4      In April 1994, the State filed an information charging the defendant with five felony counts, *viz.*: two counts of first degree murder (counts I and II), two counts of aggravated battery (counts III and IV), and one count of unlawful use of a weapon, a handgun, by a felon (count V). Both murder counts accused the defendant of beating Jeannie Boyd-Jones to death, with count I alleging that he knew that his actions would cause Jeannie's death, and count II alleging that he knew that his actions created a strong probability of great bodily harm to Jeannie. The two aggravated-battery counts alleged that the defendant beat, and caused great bodily harm to, two other women, Lisa Chamness and Melissa Pugh.

¶ 5      In September 1994, a bench trial was held. The State called several witnesses against the defendant, including the two complainants in the aggravated-battery counts, Lisa Chamness and Melissa Pugh. These latter two witnesses considered themselves "wives" of the defendant under Islamic law or tradition. Both of them testified, in frightful detail, about an hours-long ordeal in April 1994, when the defendant, who was angry and accusatory, beat the two of them and Jeannie, forcefully and repeatedly, with a wooden club, as all three women cried. Other testimony established that the defendant's beating of Jeannie caused medical conditions, including blood loss, that caused her death.

2

¶ 6     For the defense, only the defendant testified.  The defendant testified that in the Islamic faith, which he had been studying and practicing for many years, a husband may discipline his wives in three stages, the third stage of which involves "beating them lightly" on the legs and buttocks.  According to the defendant, he struck Jeannie Boyd-Jones, Lisa Chamness, and Melissa Pugh as part of the third-stage discipline, after he had reason to suspect drug use and marital infidelity.  At the time he struck his three wives, the wives were fully dressed, and therefore the defendant could not observe bruises on them, and none of the three wives cried as he struck them.  Sometime after the incident, the defendant came to think that he had struck his wives too hard, moving beyond that which his faith authorized.  Still, the defendant insisted that at the time he administered the discipline to Jeannie, he did not intend to cause death or great bodily harm.

¶ 7     During closing argument, defense counsel focused on the two charges of first degree murder, arguing that the evidence showed that the defendant had acted recklessly in his attempt to discipline Jeannie by beating her with a club but did not show that he acted with any mental state required for first degree murder.  After hearing the closing arguments, the circuit court expressed its view that the defendant had beaten Jeannie "to a bloody pulp," excluding any possibility that the defendant had acted recklessly toward her.  The court found the defendant guilty on both first degree murder counts and on the three other felony counts.

¶ 8     In November 1994, the circuit court sentenced the defendant as follows: for first degree murder, as charged in count I, imprisonment for natural life; for the aggravated battery of Lisa Chamness, imprisonment for 10 years; for the aggravated battery of Melissa Pugh, 5 years; and for the unlawful use of a weapon by a felon, 5 years.  The lesser prison sentences were made concurrent with one another but consecutive to the natural-life sentence.  (The court did not impose a sentence for first degree murder as charged in count II.)

¶ 9    The defendant appealed from the judgment of conviction. In his direct appeal, the defendant presented two arguments about his prison sentences, which need not be described here, and these two arguments: (1) the trial evidence did not establish a requisite mental state for first degree murder, and therefore the evidence was insufficient to prove the defendant guilty of first degree murder, though the evidence did establish recklessness and was sufficient to prove him guilty of the lesser offense of involuntary manslaughter, and (2) defense counsel was constitutionally ineffective for failing to call an expert witness to testify about Islam and the disciplinary measures that the religion required or allowed a husband to take against his wife. This court rejected all of the defendant's arguments and affirmed the judgment of conviction. See *People v. Jones*, 297 Ill. App. 3d 688 (1998).

¶ 10   In November 1997, the defendant filed with the circuit court his first petition for postconviction relief in this cause. In his first postconviction petition, the defendant alleged that (1) trial counsel provided constitutionally ineffective assistance in various ways, including a failure to "introduce any Islamic material to substantiate Islamic Disciplinary measures," and (2) the circuit court abused its discretion by refusing to consider that the defendant might be guilty of second degree murder as an alternative to first degree murder. The circuit court summarily dismissed the petition as patently without merit. The court commented, *inter alia*, that the defendant, at trial, would not have been helped by evidence concerning the Islamic faith's views on disciplinary measures that a husband may take toward his wife. On appeal, this court agreed that the postconviction petition was frivolous and patently without merit. In regard to the postconviction claim that trial counsel was ineffective for failing to offer evidence about the disciplinary measures that a Muslim husband may take against his wife, this court stated that the issue of counsel's failure to call a religious expert at trial was an issue decided by this court in the

4

direct appeal, and the claim therefore was *res judicata*. The summary dismissal of the defendant's first postconviction petition was affirmed. *People v. Jones*, No. 5-98-0116 (Apr. 19, 1999) (unpublished order pursuant to Supreme Court Rule 23).

¶ 11    In April 2001, the defendant filed with the circuit court a "pro se petition for relief from judgment 2-1401(f) and pro se petition for post conviction relief." (Of course, the postconviction petition was a successive petition.) In that pleading, the defendant claimed that his natural-life sentence for first degree murder was constitutionally impermissible because it violated the holding of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). The circuit court summarily dismissed the postconviction petition, but outside the applicable 90-day timeframe. See 725 ILCS 5/122-2.1(a)(2) (West 2000). This court reversed the summary-dismissal order solely because it was entered more than 90 days after the petition was filed. *People v. Jones*, No. 5-04-0208 (Sept. 22, 2004) (unpublished summary order pursuant to Supreme Court Rule 23(c)). On remand, the circuit court appointed postconviction counsel, through whom the defendant filed a "supplemental amended petition for post conviction relief," wherein he claimed that his constitutional rights were violated when he was forced to wear a stun belt during his trial. The State filed a motion to dismiss both the *pro se* petition filed in April 2001 and the "supplemental amended petition" filed through counsel. The circuit court granted the State's motion to dismiss, finding that the defendant had failed to satisfy the cause-and-prejudice test for the filing of a successive postconviction petition. This court affirmed. *People v. Jones*, No. 5-05-0173 (Apr. 6, 2006) (unpublished order pursuant to Supreme Court Rule 23).

¶ 12    In December 2005, while the appeal in No. 5-05-0173 was pending, the defendant filed in the circuit court a *pro se* petition for relief from judgment pursuant to section 2-1401(f) of the Code of Civil Procedure (735 ILCS 5/2-1401(f) (West 2004)), wherein he claimed that his natural-life sentence for first degree murder and one other sentence were void.  In March 2006, the defendant, again *pro se*, filed an identical section 2-1401(f) petition.  The circuit court *sua sponte* dismissed the petition.  This court affirmed.  *People v. Jones*, No. 5-06-0654 (Nov. 6, 2007) (unpublished order pursuant to Supreme Court Rule 23).

¶ 13    On July 21, 2017, the defendant filed with the circuit court the motion that is the subject of the instant appeal, namely, a *pro se* motion for leave to file a successive postconviction petition.  The motion was accompanied by the postconviction petition that the defendant sought leave to file.  (If allowed to file the petition, it would have been the defendant's third postconviction petition in this cause.)  In the motion for leave to file, the defendant stated that he had "newly discovered evidence" that would have changed the outcome of his trial.  The newly-discovered evidence was the "will and last testament" of Jeannie A. Boyd-Jones, dated May 2, 1993.  The defendant further stated that he was unaware of the will until "March 2016," when he "received [it] by mail from his mother *** with no explanation as to from where she received it," and that he "could not have presented this evidence any sooner than now."

¶ 14    Accompanying the motion for leave was a "petition for post-conviction relief based on newly discovered evidence."  In the petition, the defendant asserted that he was actually innocent of first degree murder of Jeannie, and he stated that Jeannie's will was newly-discovered evidence of his actual innocence.  According to the defendant, the will established that Jeannie was a knowledgeable, faithful, and practicing Muslim, and since the Muslim faith includes an acceptance of "flogging" and "corporal punishment," the trial court's awareness of the will and of Jeannie's

6

sincere commitment to Islam would have precluded the court from finding him guilty of first degree murder.

¶ 15    Attached to the proposed successive postconviction petition was a copy of Jeannie's purported will.  The will consisted of three typed paragraphs on one sheet of paper.  It was dated May 2, 1993, and was captioned, "My Will and Last Testament."  It was signed by "Jeannie A. Boyd Jones" and by three witnesses.  The first paragraph of the will devised various items of Jeannie's tangible personal property, including "[her] Holy Qur-an," to her son and two daughters.  This first paragraph included a brief exhortation that the children always remain faithful to Allah.  The second paragraph of the will devised personal property to Jeannie's husband, the defendant.  In this second paragraph, Jeannie expressed her love and gratitude for her husband, as well as her hope that she had been "the best [Muslim] wife that [she] could have been."  In the third paragraph of the will, Jeannie expressed her desire that her husband should have full custody of her children and that he should raise the children in the Islamic faith, and her desire that her husband should "wash and prepare [her] body" prior to "an Islamic burial in an Islamic cemetery."

¶ 16    On the same day that the defendant's motion for leave was filed with the circuit clerk, the circuit court denied the motion.  In its docket-entry order, the court stated, *inter alia*, that evidence regarding Jeannie's will, or evidence that Jeannie was Muslim, would not have altered the outcome of the defendant's trial.  The defendant filed a timely notice of appeal from the order denying him leave to file a successive postconviction petition, thus perfecting the instant appeal.

¶ 17                                ANALYSIS

¶ 18    The defendant appeals from the circuit court's July 21, 2017, order denying his *pro se* motion for leave to file a successive petition for relief under the Post-Conviction Hearing Act (Act)

7

(725 ILCS 5/122-1 *et seq.* (West 2016)).  Appellate review of such an order is *de novo. People v. Wrice*, 2012 IL 111860, ¶ 50.

¶ 19    The defendant's petition, if leave to file it had been granted, would have been the defendant's third postconviction petition.  As noted *supra*, the defendant's appointed appellate counsel, OSAD, has concluded that this appeal, which is the defendant's sixth appeal to this court in this cause, lacks arguable merit.  In the memorandum of law accompanying its *Finley* motion, OSAD discusses the potential issue of whether the circuit court erred in denying the defendant leave to file the successive petition.  This court agrees with OSAD that the ruling was not erroneous and that any argument to the contrary would lack merit.

¶ 20    The Act provides a procedural mechanism through which a criminal defendant may assert that his constitutional rights were substantially violated during the proceedings that resulted in his conviction.  725 ILCS 5/122-1(a)(1) (West 2018); *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002).  The Act contemplates the filing of only one postconviction petition.  725 ILCS 5/122-3 (West 2018) (any constitutional claim "not raised in the original or an amended petition is waived"); *People v. Bailey*, 2017 IL 121450, ¶ 15.

¶ 21    However, under section 122-1(f) of the Act, a defendant may seek leave of the circuit court to file a second or successive postconviction petition.  725 ILCS 5/122-1(f) (West 2018).  Such leave should be granted only if the defendant demonstrates "cause" for his failure to bring his constitutional claim in his first postconviction proceeding and "prejudice" resulted from that previous failure.  *Id.*  Cause is shown by identifying some "objective factor" that "impeded" the defendant's ability to raise his claim during his first postconviction proceeding.  *Id.*  Prejudice is shown by demonstrating that the claimed constitutional violation "so infected the trial that the resulting conviction or sentence violated due process."  *Id.*  A defendant cannot obtain leave of

court to file a successive petition unless he satisfies each of the two prongs of this cause-and-prejudice test. *People v. Guerrero*, 2012 IL 112020, ¶ 15. When a court examines a motion for leave to file a successive postconviction petition, it should ascertain only whether the defendant has alleged facts that make "a *prima facie* showing of cause and prejudice." *Bailey*, 2017 IL 121450, ¶ 24.

¶ 22    There is one circumstance in which a defendant will be granted leave to file a successive petition without showing cause and prejudice: if he sets forth a colorable claim of actual innocence based on newly-discovered evidence, he will be granted leave to file a successive petition. *People v. Ortiz*, 235 Ill. 2d 319, 330-31 (2009). In order to raise such an actual-innocence claim, a defendant must present evidence that meets these three criteria: (1) the evidence was unavailable at the time of his trial and could not have been discovered sooner through due diligence, (2) the evidence is material and noncumulative, and (3) the evidence is of such conclusive character that it probably would change the result on retrial. *People v. Edwards*, 2012 IL 111711, ¶ 32.

¶ 23    In his motion for leave to file a successive petition, the defendant stated that he possessed "newly discovered evidence" that would have altered the outcome of his trial. The newly-discovered evidence was the "will and last testament" of Jeannie Boyd-Jones, dated May 2, 1993, and the defendant attached a copy of the will. The will's contents are described, in considerable detail, *supra*. For the purpose of deciding this appeal, this court presumes that the purported will is Jeannie's authentic, valid, and unrevoked will.

¶ 24    In his written response to OSAD's *Finley* motion, the defendant explains how, in his view, Jeannie's will is relevant to his murder case. The defendant suggests that the will is solid evidence that Jeannie, his late wife, was a knowledgeable and faithful Muslim, that she freely accepted all of the tenets and practices of the Muslim faith that they shared, and that she sought to live all

9

aspects of her life in accordance with their shared faith, and that their marriage was unmarred by any spousal abuse or domestic violence. (The defendant makes clear that he did not intend to use the will as evidence that Jeannie had somehow consented to being beaten to death.)

¶ 25 Even if Jeannie's will is viewed as proof positive that Jeannie was a knowledgeable and faithful Muslim, etc., there is no reason to think that the will would have altered the outcome of the defendant's trial, or that it would result in a different outcome at a new trial. Given the nature of the State's evidence, the will could not forestall a finding that the defendant committed first degree murder. Regardless of whether the defendant's motion for leave is evaluated under the cause-and-prejudice test or in terms of actual innocence, the circuit court's denial of his motion must be affirmed.

¶ 26 As this court stated in its opinion in the direct appeal, the trial evidence showed that the defendant, who was a tall and large man, beat Jeannie over an hours-long period. He beat her numerous times with a wooden stick that was approximately the size of a baseball bat, sometimes striking her body with "full force." *Jones*, 297 Ill. App. 3d at 690. Jeannie repeatedly lost consciousness, and the defendant repeatedly revived her, during that period. At one point, the defendant told Jeannie to "go ahead and die, bitch." Finally, Jeannie stopped breathing. *Id.* at 690-91. The injuries sustained by Jeannie were horrific. As this court noted, "[p]ortions of [Jeannie's] deep body fat liquified" due to the heavy blows, more than one-third of Jeannie's blood supply "permeated the internal body cavity," and "[h]er lower torso and shanks were one massive contusion, with no portion of her frame free of visible welts and bruises." *Id.* at 690. In short, the defendant "reduced his wife's [that is, Jeannie's] body tissue to a 'bloody pulp.' " *Id.* at 693 (quoting from the circuit court's remarks at the close of the defendant's trial). This court concluded that the trial evidence established that the defendant acted with knowledge that the beatings he

10

inflicted created a strong probability of great bodily harm, and thus supported the finding that he committed first degree murder. *Id.* at 690-91.

¶ 27    Given the horrific injuries that the defendant inflicted upon Jeannie, evidence of Jeannie's will would definitely not have changed the result at trial, and it would not change the result on retrial. Regardless of whether Jeannie was a knowledgeable and faithful Muslim, etc., her horrific injuries establish that the defendant acted with knowledge that the blows he delivered created a strong probability of great bodily harm. (The compelling testimonies of Lisa Chamness and Melissa Pugh, which chillingly detailed the circumstances surrounding the beating, provided further proof of this knowledge element.) Therefore, a finding or verdict that the defendant was guilty of first degree murder is inescapable.

¶ 28                    CONCLUSION

¶ 29    The newly-discovered evidence proffered by the defendant, *i.e.*, the "will and last testament" of the wife whom he killed, could not forestall a finding or verdict that the defendant committed first degree murder. Therefore, the circuit court did not err in denying the defendant's *pro se* motion for leave to file a successive postconviction petition. Any argument to the contrary would be meritless. Accordingly, OSAD is granted leave to withdraw as the defendant's counsel, and the judgment of the circuit court is affirmed.

¶ 30    Motion granted; judgment affirmed.