THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JUDY ALTOM, Defendant-Appellant.

Fifth District    No. 5—02—0016

Opinion filed March 21, 2003.

Daniel M. Kirwan and Janet Gandy Fowler, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

James Creason, State's Attorney, of Salem (Norbert J. Goetten, Stephen E. Norris, and Trent M. Marshall, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HOPKINS delivered the opinion of the court:

Judy Altom (defendant) appeals from the dismissal of her second postconviction petition after counsel had been appointed for her. On May 12, 1986, pursuant to negotiations with the State, defendant

pleaded guilty to murder (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(2)), and the State agreed to dismiss two counts of the indictment that charged defendant with cruelty to children (Ill. Rev. Stat. 1983, ch. 23, par. 2368) and murder (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(3)) and to refrain from seeking the death penalty. After a sentencing hearing, defendant was sentenced to an extended term of 50 years' imprisonment· with credit for 462 days served. On this appeal, defendant contends only, relying on *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), that her extended-term sentence for murder must be reduced or vacated, where the facts that increased the prescribed range of penalties were not found by the trier of fact to have been proven beyond a reasonable doubt. The United States Supreme Court delivered the following holding in *Apprendi* as its bottom line:

> "Other than a fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury[ ] and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

See *People v. Rush*, 322 Ill. App. 3d 1014, 1020, 757 N.E.2d 88, 94 (2001).

At the time of defendant's offense, March 20, 1985, section 5—8—1(a)(1) of the Unified Code of Corrections (Code) provided:

> "Sentence of Imprisonment for Felony. (a) A sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:
>
> (1) for murder, (a) a term shall be not less than 20 years and not more than 40 years, or (b) if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or that any of the aggravating factors listed in subsection (b) of Section 9—1 of the Criminal Code of 1961 are present, the court may sentence the defendant to a term of natural[-]life imprisonment, or (c) if the defendant has previously been convicted of murder under any state or federal law or is found guilty of murdering more than one victim, the court shall sentence the defendant to a term of natural[-]life imprisonment[.]" Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1).

Section 5—5—3.2(b) of the Code provided, in pertinent part:

> "(b) the following factors may be considered by the court as reasons to impose an extended[-]term sentence under Section 5—8—2 upon any offender who was at least 17 years old on the date the crime was committed:
>
> * * *
>
> (2) When a defendant is convicted of any felony and the court

finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty; or

(3) When a defendant is convicted of any felony committed against:

(i) a person under 12 years of age at the time of the offense;

(ii) a person 60 years of age or older at the time of the offense; or

(iii) a person physically handicapped at the time of the offense."

Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(b).

Section 5—8—2(a)(1) of the Code provided that a person convicted of murder could be sentenced to an extended prison term of not less than 40 years and not more than 80 years if the judge finds that the factors in aggravation set forth in paragraph (b) of section 5—5—3.2 were present. Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—2(a)(1).

On March 29, 1985, a three-count indictment was filed that charged defendant with one count of cruelty to children and two counts of murder.

On May 12, 1986, defendant entered a plea of guilty to murder (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(2)) pursuant to *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970). The circuit court read the charge to which defendant was entering her plea and ascertained defendant's understanding of the charge. Defendant was admonished that the ordinary and usual term for murder was a prison sentence of not less than 20 and not more than 40 years and that under certain circumstances defendant could be sentenced to not more than 80 years' imprisonment or to natural-life imprisonment. Defendant stated that she understood the possible penalties. The court informed defendant that she had a right to plead not guilty or guilty and that she had a right to persist in her plea of not guilty. The court further informed defendant that if she pleaded guilty she would be waiving her right to a jury or nonjury trial and that she would be waiving her right to confront and cross-examine witnesses who would appear and attempt to prove the charge against defendant. The court then ascertained that defendant understood that if she pleaded guilty there would be no trial and no confrontation of witnesses. The court inquired of defendant if any promises had been made to her concerning her guilty plea and if any representations had been made to her concerning the sentence she might receive. Defendant responded, "Just the plea bargain the State's Attorney has offered." She also responded that she understood that the death penalty had been waived. After questioning defendant regarding whether any threats had been made to her concerning her guilty plea and receiving defendant's negative reply, the court inquired whether defendant had

discussed the case with her attorney and whether he had answered her questions, and defendant responded that she had discussed the case with her attorney and that he had answered her questions. After determining that defendant was pleading guilty of her own free will, defendant was presented with a written guilty plea, which she signed. The court read the written guilty plea, which included a statement of defendant's age, 22. The court asked defendant if the written guilty plea showed her intention to plead guilty to murder and waive a jury trial, to which defendant responded, "Yes."

The court asked the State's Attorney to state the factual basis for the plea, and he responded by stating what various individuals would testify to. Two witnesses would testify that defendant had stated that she had inflicted the cut wounds which were found on the victim. The doctor, Harry Parks, who had performed the autopsy on the victim, Jody Branon, would testify that the cause of death was severe, multiple, blunt trauma to the body and that also contributing to the cause of death were 60 to 80 external lacerations on the trunk and limbs of the victim. The doctor would further testify that during the autopsy, he had observed various internal injuries: edema to the brain, contusions to the baby's lungs, diaphragm, spleen, right kidney, pancreas, and liver, and fractures to some of the rib bones. He also observed that the mesentery, which holds together the small intestine, was ripped apart. The doctor would opine that the internal injuries "were caused by a minimum of between 15 and 20 severe bodily blows to the abdomen and trunk of the body consistent with punches and kicks" and that most of the injuries were inflicted within 24 hours of death.

The State's Attorney further stated that if the case went to trial, the State would call a radiologist, Dr. Appolinar, who would testify that he had X-rayed the victim's body and found three broken ribs which had been broken between one and four weeks prior to the victim's death.

The State's Attorney also stated that at Darrell Branon's trial (No. 85—CF—37), defendant had waived her fifth amendment rights and testified that more than once she had stepped hard on the body of the victim and that later on the night of March 20, 1985, she had inflicted cut marks with a knife on the victim's body. At the State's Attorney's request, the court stated that it would take judicial notice of the trial transcript in People v. Branon, No. 85—CF—37, as an additional factual basis for defendant's plea.

The court then went over the prior admonishments to defendant, including a possible sentence of 80 years' imprisonment if the victim was under 12 years of age at the time of the murder and of natural-

life imprisonment if other aggravating factors were shown. After defendant again stated her understanding of the charge, her rights, and the possible penalties, she stated that she wished to plead guilty to the charge. The court ascertained that defendant was satisfied with the representation that had been provided to her by her attorney. The court stated that it found that defendant was guilty of the crime charged, that she entered the plea voluntarily and knowingly, and that defendant was 22 years of age.

On June 24, 1986, the sentencing hearing commenced. Suzzanne Graham, a worker for the Department of Children and Family Services, identified Jody Branon's birth certificate, which stated September 27, 1984, as his date of birth. Dr. Harry Parks testified concerning the extensive injuries to the victim. On June 26, 1986, defendant was sentenced to 50 years' imprisonment, after the court found that defendant was 22 years of age, that the victim was $5^{1/2}$ months old at the time of his death (which is less than 12 years of age), and that the offense was accompanied by exceptionally heinous behavior indicative of wanton cruelty. The court gave a brief recitation of the nature and circumstances of the offense.

Defendant filed a motion to reduce sentence and a motion to withdraw the plea of guilty, which were denied after hearings.

On direct appeal to this court, defendant contended only that the sentence was so excessive that it constituted an abuse of discretion. In affirming the judgment of the circuit court, the Honorable Moses Harrison II, speaking for this court, stated: "The heinous and brutal nature of the crime is undisputed." *People v. Altom*, No. 5—88—0086, order at 6 (July 18, 1989) (unpublished order pursuant to Supreme Court Rule 23 (107 Ill. 2d R. 23)).

Defendant's first postconviction petition is not relevant to this appeal and need not be discussed.

On April 3, 2001, defendant's second postconviction petition was filed. She alleged that the circuit court's findings that the victim was under the age of 12 at the time of the murder, that she was over the age of 17 at the time of the offense, and that the offense was exceptionally brutal or heinous behavior indicative of wanton cruelty were not proved beyond a reasonable doubt during a trial. Defendant asked that her sentence be vacated. Her argument was based on *Apprendi*. Counsel was appointed to represent defendant.

On May 7, 2001, the State filed a motion to dismiss the petition. The motion alleged that the petition was untimely and that she had previously filed a postconviction petition which had been dismissed.

On June 27, 2001, the State filed an amended motion to dismiss the petition. The motion additionally alleged that *Apprendi* did not ap-

ply retroactively and that even if *Apprendi* did apply, defendant had not been sentenced beyond the statutory limit, because death was the maximum penalty for murder.

On July 30, 2001, defense counsel filed a certificate of compliance with Supreme Court Rule 651(c) (134 Ill. 2d R. 651(c)) and an answer to the amended motion to dismiss. The most important allegation in the answer is that in *People v. Rush*, 322 Ill. App. 3d 1014, 757 N.E.2d 88 (2001), this court held that *Apprendi* was applicable to a timely filed postconviction petition. This court notes that at that time *People v. Adams*, 333 Ill. App. 3d 171, 775 N.E.2d 197 (2002), which held that *Apprendi* does not apply to an untimely postconviction petition, had not yet been filed.

On January 2, 2002, the court found that defendant had waived any *Apprendi* issue by entering a guilty plea and that the petition was both an untimely petition and a successive petition. The court dismissed the petition.

On this appeal, defendant contends only, relying on *Apprendi*, that her sentence for murder must be reduced or vacated, where the facts that increased the prescribed range of penalties were not found by the trier of fact to have been proven beyond a reasonable doubt. As the Illinois Supreme Court observed in *People v. Jackson*, 199 Ill. 2d 286, 296, 769 N.E.2d 21, 27 (2002), by pleading guilty, a defendant *waives* the rights to a jury trial and to proof beyond a reasonable doubt. A guilty plea is intrinsically a relinquishment of the right to a trial, at which the State would be put to its burden of proof beyond a reasonable doubt. "There is no validity to the complaint that a defendant did not 'know' that he was waiving the right to have the State prove enhancing factors beyond a reasonable doubt, because by pleading guilty the defendant releases the State from proving *anything* beyond a reasonable doubt." (Emphasis in original.) *Hill v. Cowan*, 202 Ill. 2d 151, 154, 781 N.E.2d 1065, 1067 (2002). The Illinois Supreme Court does not require the trial court, before accepting a guilty plea, to advise a defendant of all the elements of the crime of which she stands accused. *Jackson*, 199 Ill. 2d at 296, 769 N.E.2d at 27. It is sufficient that the court advise her of the nature of the crime, of the range of penalties to which she might subject herself by her plea, and of her right to plead not guilty, if she so chooses, and that a guilty plea would operate to waive her rights to a jury trial and to be confronted with the witnesses against her. *Jackson*, 199 Ill. 2d at 296-97, 769 N.E.2d at 27.

In the case at bar, defendant was advised of the nature of the crime and of the range of penalties to which she might subject herself by her plea and that a guilty plea would operate to waive her rights to

a jury trial and to be confronted with the witnesses against her. She was also advised that she could be sentenced to an extended prison term of 80 years or natural life if the court found that the offense had been accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or to 80 years' imprisonment if the court found that the victim was under the age of 12 at the time of the offense. Defendant was advised that she had a right to persist in her plea of not guilty, and the court questioned her on whether promises, other than the plea agreement, or threats had induced her guilty plea. The court explained that defendant had a right to a trial by either a jury or the judge. Defendant was also advised that she had a right to confront the witnesses against her. Lastly, defendant was advised that if she pleaded guilty, there would be no trial and that she would be giving up the rights which had been explained to her. The record establishes that on September 26, 1985, she knew that she could receive a death sentence, because she filed a "Motion for individual *voir dire*," which stated in part: "1. That this is a capital offense." With this information in hand, she made the decision to relieve the State of the burden of proving any element of the crime. See *Jackson*, 199 Ill. 2d at 297, 769 N.E.2d at 27. Concerning her allegation that her age at the time of the offense should have been submitted to a jury, defendant's actions at the plea proceedings constitute a judicial admission that she was 22 years of age. See *People v. Williams*, 188 Ill. 2d 365, 369-70, 721 N.E.2d 539, 543 (1999).

Defendant in her brief argues that Hill, Jackson, and defendant had not been told that the charge contained an element of "exceptionally brutal or heinous behavior indicative of wanton cruelty" and that in defendant's case she had not been told that the charge contained an element that the victim was under 12 years of age. Until she filed her brief on this appeal, defendant had not objected to the failure of the charging instrument to state the factors on which the extended-term sentence was based. Where the defendant does not object until an appeal to the failure of the charging instrument to state the aggravating factors, this court will not consider the issue, because the defendant's substantial rights are not involved and the fairness, integrity, and public reputation of the judicial system are not affected by the omission. See *United States v. Cotton*, 535 U.S. 625, 152 L. Ed. 2d 860, 122 S. Ct. 1781 (2002). Next, this court notes that defendant pleaded guilty; there was no trial.

She argues that *Ring v. Arizona*, 536 U.S. 584, 153 L. Ed. 2d 556, 122 S. Ct. 2428 (2002), clarified the *Apprendi* decision. The constitutional infirmity the Court identified in *Ring* was that the Arizona death penalty scheme removed from the jury the determination of

facts required to establish the defendant's eligibility for a death sentence—specifically, the finding of aggravating factors. "Because Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' *Apprendi*, 530 U.S.[ ] at 494[ ] n.19, [147 L. Ed. 2d at 457 n.19, 120 S. Ct. at 2365 n.19,] the Sixth Amendment requires that they be found by a jury." *Ring*, 536 U.S. at 609, 153 L. Ed. 2d at 577, 122 S. Ct. at 2443. *Ring* involved a jury trial after which the judge found the aggravating factor on which a death sentence was imposed. *Ring* is not helpful to defendant in the case at bar, because she pleaded guilty.

Defendant relies on *Smith v. O'Grady*, 312 U.S. 329, 85 L. Ed. 859, 61 S. Ct. 572 (1941), to argue that the charge must contain every element of the offense. *Smith* is factually inapposite to the case at bar. After being arrested in one county, Smith had a conversation with someone who represented that he was a prosecutor in another county. This prosecutor informed Smith that if he pleaded guilty to burglary he would be sentenced to three years' imprisonment. When Smith returned to the second county, he pleaded guilty and was sentenced to 20 years' imprisonment. He alleged that he had never been shown a copy of the charge even after he asked for a copy upon protesting his sentence. Smith was not represented by counsel. The United States Supreme Court held that if the facts were as Smith alleged, Smith was imprisoned under a judgment invalid because it had been obtained in violation of procedural guarantees against state invasion through the fourteenth amendment. *Smith*, 312 U.S. at 334, 85 L. Ed. at 862, 61 S. Ct. at 574. In the case at bar, on April 1, 1985, at defendant's arraignment, defense counsel stated that defendant had a copy of the indictment. Defendant had counsel at every critical step in the criminal process. Until the postconviction petition, she had never objected to the charge.

Defendant also relies on *Bousley v. United States*, 523 U.S. 614, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). In *Bousley*, the defendant pleaded guilty to "using" a firearm in 1990 in violation of 18 U.S.C. § 924(c)(1) (1988). The United States Supreme Court noted that the "use" prong requires the government to show " 'active employment of the firearm.' " *Bousley*, 523 U.S. at 616, 140 L. Ed. 2d at 835, 118 S. Ct. at 1608, quoting *Bailey v. United States*, 516 U.S. 137, 144, 133 L. Ed. 2d 472, 481, 116 S. Ct. 501, 506 (1995). In 1994, Bousley sought a writ of *habeas corpus* under 28 U.S.C. § 2241 (1994), "challenging the factual basis for his guilty plea on the ground that neither the 'evidence' nor the 'plea allocution' showed a 'connection between the firearms in the bedroom of the house[ ] and the garage, where the drug trafficking occurred.' " *Bousley*, 523 U.S. at 617, 140 L. Ed. 2d at

836, 118 S. Ct. at 1608. The Supreme Court held that Bousley was entitled to a hearing on his petition if he could demonstrate no more than that he did not "use" a firearm. *Bousley*, 523 U.S. at 624, 140 L. Ed. 2d at 841, 118 S. Ct. at 1612. In the case at bar, defendant does not even claim that her plea was not knowingly and intelligently entered. The plea proceedings established that the age of the victim was under 12 and that the crime was exceptionally brutal or heinous behavior indicative of wanton cruelty.

Instructive on the issue raised by defendant on this appeal is the recent case of *People v. Thurow*, 203 Ill. 2d 352 (2003). Because defendant failed to make a timely objection to the court considering the aggravating factors in sentencing or to the indictment's failure to include these factors, the issue is reviewed under a plain-error analysis. See *Thurow*, 203 Ill. 2d at 363. In the case at bar, the evidence in support of the omitted factors was uncontested and overwhelming. See *Thurow*, 203 Ill. 2d at 369. This court can take judicial notice of its own records, as did the trial court of its records. See *Mason v. Snyder*, 332 Ill. App. 3d 834, 840, 774 N.E.2d 457, 461 (2002). This court takes judicial notice of *People v. Branon*, No. 5—85—0710 (October 14, 1987) (unpublished order pursuant to Supreme Court Rule 23 (107 Ill. 2d R. 23)), in which several times the age of Jody Branon was referred to as 5½ months. The factual basis presented at the plea proceeding and the witnesses at the sentencing hearing establish that the murder was exceptionally brutal or heinous behavior indicative of wanton cruelty.

For the foregoing reasons, the judgment is affirmed.

Affirmed.

MAAG and KUEHN, JJ., concur.