607 S.E.2d 57

**The STATE, Respondent,**

v.

**John Richard WOOD, Appellant.**

No. 25907.

Supreme Court of South Carolina.

Heard Oct. 5, 2004.

Decided Dec. 6, 2004.

Rehearing Denied Jan. 20, 2005.

Assistant Appellate Defender Robert M. Dudek, of S.C. Office of Appellate Defense, of Columbia, for appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General S. Creighton Waters, of Columbia, and Robert M. Ariail, of Greenville, for respondent.

Justice MOORE:

Appellant was charged with the murder of a Highway Patrol officer and the possession of a weapon during the commission of a violent crime. The jury found appellant guilty as charged and he was sentenced to death. We affirm.

## FACTS

Trooper Eric Nicholson, while patrolling I–85 in the Greenville area, called to inform the dispatcher that he was going to stop a moped. After Nicholson activated his lights and siren, appellant, who was riding the moped, did not immediately stop. Two other troopers subsequently heard Nicholson scream on the radio and they rushed to the scene whereupon they found Nicholson had been shot five times. The driver's side window of Nicholson's car was completely shattered. Both of his pistols were secured in their holsters. Eight shell casings were found at the scene.

There were several eyewitnesses to Nicholson's murder. Witnesses recalled seeing a moped being followed by a trooper with activated lights and siren. The moped took the off-ramp

to leave I–85 and then took a right down a frontage road. As the two vehicles got on the frontage road, the trooper sped up to get beside the moped and then veered to the left to stop at an angle against a raised median in order to block the moped's progress. The moped came to a stop close to the driver's side window.

Immediately upon stopping, appellant stood up over the moped and raised his arm towards the driver's side window of Trooper Nicholson's car. Some witnesses saw a weapon in appellant's hand and heard gunshots. After firing several shots in the driver's side window of Nicholson's car, appellant backed the moped up, turned it around, and fled at a high rate of speed.

After the shooting, some concerned citizens (the Wheelers) chased appellant. Appellant entered a parking lot and then jumped into the passenger's seat of a Jeep, driven by a woman. The Wheelers subsequently called in the tag number to police.

Once law enforcement officers began chasing the Jeep, appellant opened fire on the pursuing officers. One officer was struck in the face by a bullet fragment. He survived the injury. After subsequently hijacking a truck, appellant was eventually stopped and taken into custody.

The jury convicted appellant of murder and possession of a weapon during the commission of a violent crime and sentenced him to death.

## ISSUES

I.    Did the trial court err by excusing a juror for cause?

II.   Did the trial court err by refusing to instruct the jury on the law of voluntary manslaughter?

III.  Did the trial court err by finding S.C.Code Ann. § 16–3–20 (2003) constitutional although it mandates that a defendant has to waive jury sentencing if he pleads guilty?

IV.   Was the trial court without subject matter jurisdiction to sentence appellant to death where the murder indictment did not allege an aggravating circumstance?

## DISCUSSION

### I.  Juror Qualification

Appellant argues the trial court erred by excusing potential juror Smith, a black female, for cause.

During voir dire by the trial court, Smith stated she could carefully consider the law and find appellant either guilty or not guilty.  However, she stated she could not, under any circumstances, impose the death penalty.  Further, she stated that her firm view on the death penalty was that there is not any crime or situation where the death penalty would be appropriate.  She classified herself as someone who would always vote for life imprisonment.

Defense counsel then conducted voir dire of Smith.  The following occurred:

*Defense counsel:* And you agree with me, I would suspect, that the jury in a case ... should be made up of a cross section of the community?

*Smith:* Yes, sir.

*Defense counsel:* You should have young people, old people, black people and white people, rich people, poor people, protestants, catholics.  In other words, the jury should be a cross section of everyone.  Do you agree with that?

*Smith:* Yes, sir.

. . .

*Defense counsel:* If you were on a jury and you had participated in the conviction of this person and then you had heard evidence from the prosecution where he is requesting that you impose the death penalty, and you have heard ... information from the defendant, when he says, "I would prefer that you give me a life sentence," would you take into consideration the request of the prosecution and give meaningful consideration to the imposition of the death penalty in any case?

*Smith:* Yes, sir.

*Defense counsel:* You would?

*Smith:* I will.

. . .

*Defense counsel:* Could you vote for the death penalty if you thought it was the proper penalty under those circumstances?

*Smith:* ·Yes, sir.

The trial court then questioned Smith:

*Court:* Ms. Smith, what happened—five, ten minutes ago before [defense counsel] got up, why did you tell me that you would never give the death penalty and all of a sudden we're ready to give it? What happened?

*Smith:* Well, in different situations. It, to me, just all depends. I don't know.

*Court:* Well, earlier you were so adamant to me.... I asked you if there was any situation, anything that would warrant the death penalty, and you cut me off. No way. And now I'm talking to a different person. What happened?

*Smith:* I have no idea.

The State then questioned Smith:

*The State:* ... based on [defense counsel's] appeal to you to serve on this jury to make it demographically and racially balanced and all of that, is that what led you to change your statement as to you felt that you could impose the death penalty?

*Smith:* Yes, sir.

The trial court then found Smith was not qualified to be a juror. The court stated that Smith acknowledged the only reason she changed her testimony was because she felt a duty to be on the jury. The court further stated, "To suggest that she can come in here and take that type of pandering examination and the light bulb goes off that she as a black must serve on this jury so she can vote for life imprisonment, I'm not going to permit something so utterly transparent."

Appellant argues the trial court erred by disqualifying Smith as a prospective juror.

■ In a capital case, the proper standard in determining the qualification of a prospective juror is whether the juror's views on capital punishment would prevent or substantially impair the performance of his duties as a juror in accordance

with his instructions and his oath. *State v. Council,* 335 S.C. 1, 515 S.E.2d 508, *cert. denied,* 528 U.S. 1050, 120 S.Ct. 588, 145 L.Ed.2d 489 (1999). *See also State v. Longworth,* 313 S.C. 360, 438 S.E.2d 219 (1993), *cert. denied,* 513 U.S. 831, 115 S.Ct. 105, 130 L.Ed.2d 53 (1994) (citing S.C.Code Ann. § 16–3–20(E) (2003)) (in capital case, juror may not be excluded for her attitude against capital punishment unless it would render juror unable to return a verdict according to law).

When reviewing the trial court's qualification or disqualification of prospective jurors, the responses of the challenged jurors must be examined in light of the entire voir dire. *Id.* The ultimate consideration is that the juror be unbiased, impartial, and able to carry out the law as explained to him. *Id.* On review, the trial court's disqualification of a prospective juror will not be disturbed where there is a reasonable basis from which the trial court could have concluded that the juror would not have been able to faithfully discharge his responsibilities as a juror under the law. *State v. Green,* 301 S.C. 347, 392 S.E.2d 157, *cert. denied,* 498 U.S. 881, 111 S.Ct. 229, 112 L.Ed.2d 183 (1990).

When reviewing the entire voir dire of Smith, it is apparent the trial court did not err by disqualifying Smith as a prospective juror. Initially, Smith was adamant she could not vote for the death penalty in any situation. However, after questioning from defense counsel, Smith changed her mind and stated she could consider the death penalty and could vote for that punishment. When the trial court asked Smith what changed her mind, she said she had no idea. However, when the State asked Smith if defense counsel's appeal to her to serve on the jury to make it demographically and racially balanced led her to change her statement so that she could impose the death penalty, Smith answered yes.

From the trial court's comments, it is clear the trial court felt Smith should be excluded for her views on capital punishment because they would prevent or substantially impair the performance of her duties as a juror. *See State v. Council, supra.* The court, when determining Smith to be disqualified, was in the best position to view Smith's demeanor. *See Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (there will be situations where trial court is left

with definite impression that prospective juror would be unable to faithfully and impartially apply the law and this is why deference must be paid to trial court who sees and hears the juror). The trial court had a reasonable basis to conclude that Smith could not faithfully carry out her duty under the law. We hold the evidence supports the trial court's decision finding Smith disqualified from jury service. *See State v. Council, supra* (determination of whether juror is qualified to serve on death penalty case is within sole discretion of trial court and is not reviewable on appeal unless wholly unsupported by the evidence).

## II. Voluntary Manslaughter Charge

█ Appellant argues the trial court erred by refusing to charge voluntary manslaughter to the jury. Appellant requested a voluntary manslaughter charge based on the fact that Trooper Nicholson conducted an aggressive stop whereby the moped had no other direction to go than to hit the patrol vehicle, the curb, or the bushes. Counsel argued appellant could reasonably have feared for his safety. The trial court denied the request on the basis there was no legal provocation.

█ Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon a sufficient legal provocation. *State v. Ivey,* 325 S.C. 137, 481 S.E.2d 125 (1997). Heat of passion alone will not suffice to reduce murder to voluntary manslaughter. *Id.* Where there are no actions by the deceased to constitute legal provocation, a charge on voluntary manslaughter is not required. *Id.* The exercise of a legal right, no matter how offensive to another, is never in law deemed a provocation sufficient to justify or mitigate an act of violence. *Id.*

In *State v. Linder,* 276 S.C. 304, 278 S.E.2d 335 (1981), Linder fled from an officer. Linder alleged that the officer bumped his motorcycle with his patrol car, thereby knocking him to the ground. Linder alleged the officer then began to fire on him and that he reached for his weapon and returned the fire. We held that, based on Linder's version of events, he was entitled to a voluntary manslaughter charge.

In *Linder,* we stated that a lawful arrest or detention in a lawful manner by an officer will not constitute an adequate

provocation for heat of passion reducing the grade of the homicide to manslaughter. This is precisely the situation in the present case. There is no evidence that Trooper Nicholson acted in an unlawful manner in discharging his duties. There is no evidence, as there was in *Linder*, that Trooper Nicholson bumped appellant's moped or that he fired upon appellant before appellant shot him multiple times.

Accordingly, because there was no evidence of sufficient legal provocation, appellant was not entitled to a voluntary manslaughter charge.

III. Constitutionality of S.C.Code Ann. § 16-3-20 (2003)

Appellant asserts *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), renders unconstitutional the requirement in S.C.Code Ann. § 16-3-20(B) (2003) that the sentencing proceeding be held before the judge when a defendant pleads guilty to murder.

As we recently stated in *State v. Downs*, 361 S.C. 141, 604 S.E.2d 377 (2004), the capital-sentencing procedure invalidated in *Ring* does not exist in South Carolina. Arizona's statute required the judge to factually determine whether there existed an aggravating circumstance supporting the death penalty regardless whether the judge or a jury had determined guilt. Ariz.Rev.Stat. § 13-703(C) (2001) (amended 2002); *Ring*, 536 U.S. at 597, 122 S.Ct. 2428. In South Carolina, conversely, a defendant convicted by a jury can be sentenced to death only if the jury also finds an aggravating circumstance and recommends the death penalty. S.C.Code Ann. § 16-3-20(B) (2003); *Sheppard v. State*, 357 S.C. 646, 652, 594 S.E.2d 462, 466 (2004). As we noted in *Downs*, *Ring* did not involve jury-trial waivers and is not implicated when a defendant pleads guilty. Other courts have also reached this conclusion. *See, e.g., Leone v. Indiana*, 797 N.E.2d 743, 749–50 (Ind.2003); *Colwell v. Nevada*, 118 Nev. 807, 59 P.3d 463, 473–74 (2003); *Illinois v. Altom*, 338 Ill.App.3d 355, 272 Ill.Dec. 751, 788 N.E.2d 55, 61 (2003), *app. denied*, 204 Ill.2d 663, 275 Ill.Dec. 77, 792 N.E.2d 308 (2003). Therefore, appellant's argument is without merit.

## IV.   Subject Matter Jurisdiction

Appellant argues the trial court lacked subject matter jurisdiction to sentence him to death because the murder indictment did not allege an aggravating circumstance.[1]   He argues that *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), holds that aggravating factors are elements of the offense of capital murder that must be charged in the indictment.

We recently addressed this issue in *State v. Downs,* 361 S.C. 141, 604 S.E.2d 377 (2004).   In *Downs,* we held that South Carolina law, rather than federal law, governs indictments for state law crimes.   Under South Carolina law, aggravating circumstances need not be alleged in an indictment for murder.   S.C.Code Ann. § 17–19–30 (2003); *State v. Butler,* 277 S.C. 452, 290 S.E.2d 1, *cert. denied,* 459 U.S. 932, 103 S.Ct. 242, 74 L.Ed.2d 191 (1982).[2]   The aggravating circumstances listed in S.C.Code Ann. § 16–3–20(C)(a) (2003) are sentencing factors, not elements of murder.   *See Butler,* 277 S.C. at 456–57, 290 S.E.2d at 3–4.   Therefore, the indictment in the instant case is valid.

## PROPORTIONALITY REVIEW

Under   State   law,   S.C.Code   Ann.   §   16–3–25(C)(3) (1985)   requires   this   Court   to   determine   in   a   death   case "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."   There is no requirement the sentence be proportional to any particular case; however, death sentences have been imposed in similar cases.   See *State v. Hughes,* 336 S.C. 585, 521 S.E.2d 500 (1999), *cert. denied,* 529 U.S. 1025, 120 S.Ct. 1434, 146 L.Ed.2d 323 (2000); *State v. Johnson,* 306 S.C. 119, 410 S.E.2d 547 (1991), *cert.*

---

1.   The indictment charging appellant with murder states:

That JOHN RICHARD WOOD did in Greenville County, on or about the 6th day of December, 2000, unlawfully and with malice aforethought kill Eric Nicholson by means of shooting him, and that Eric Nicholson died as a proximate result thereof.   This is in violation of § 16–3–10 of the South Carolina Code of Laws (1976) as amended.

2.   *Overruled on other grounds by State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991).

*denied,* 503 U.S. 993, 112 S.Ct. 1691, 118 L.Ed.2d 404 (1992); *State v. South,* 285 S.C. 529, 331 S.E.2d 775, *cert. denied,* 474 U.S. 888, 106 S.Ct. 209, 88 L.Ed.2d 178 (1985). Further, after reviewing the entire record, we conclude the death sentence was not the result of passion, prejudice, or any other arbitrary factor, and the jury's finding of a statutory aggravating circumstance is supported by the evidence. See S.C.Code Ann. § 16–3–25 (2003). Accordingly, appellant's sentence is not disproportionate under State law.

**AFFIRMED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.