657 S.E.2d 451

The STATE, Respondent

v.

Luzenski A. COTTRELL, Appellant.

No. 26424.

Supreme Court of South Carolina.

Heard Sept. 18, 2007.

Decided Jan. 28, 2008.

Chief Appellate Defender Joseph L. Savitz, III, and Appellate Defender Kathrine H. Hudgins, both of South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, and John Gregory Hembree, of Conway, for Respondent.

Justice PLEICONES:

Appellant was convicted of murder, assault with intent to kill, resisting arrest with a deadly weapon, and grand larceny. He received a death sentence for murder, the jury finding two statutory aggravating factors [1] and concurrent ten year sentences on the remaining three charges. On appeal, he contends [2] the trial court erred in refusing appellant's request that the jury be charged voluntary manslaughter as a lesser offense of murder. We agree, reverse appellant's murder conviction and death sentence, and remand for further proceedings.

---

**1.** (1) Knowingly creating a great risk of death to more than one person and (2) murdering a police officer during the performance of his official duties. S.C.Code Ann. § 16-3-20(c)(3) and (7) (2003 and Supp. 2006).

**2.** Appellant's second argument, which he conceded at oral argument is irrelevant to the merits of his appeal, is affirmed pursuant to Rule 220(b)(1), SCACR, and *State v. Bell*, 374 S.C. 136, 646 S.E.2d 888 (Ct.App.2007).

### ISSUE

Whether the evidence, viewed in the light most favorable to appellant, entitled him to a charge on voluntary manslaughter?

### FACTS/ANALYSIS

 "Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation." *State v. Cole*, 338 S.C. 97, 525 S.E.2d 511 (2000). In determining whether voluntary manslaughter should be charged as a lesser offense of murder, the court must view the evidence in the light most favorable to the defendant. The charge need not be given "where it clearly appears that there is no evidence whatsoever tending to reduce the crime from murder to manslaughter." *State v. Pittman*, 373 S.C. 527, 647 S.E.2d 144 (2007) (internal citation omitted). We therefore review the evidence in the light most favorable to appellant, mindful that the charge request is properly rejected only where "there is no evidence whatsoever" of the lesser offense.

Shortly after midnight on December 29, two automobiles pulled into a Dunkin Donuts parking lot in Myrtle Beach. Fred Halcomb was driving one car, which contained a single passenger, his girlfriend Dianne. Donnie Morgan was driving the second car; in the front passenger's seat was Donnie's fiancée, sitting behind her was appellant, and beside him in the back seat his girlfriend, Amber Counts. At the store, appellant, Fred, and Dianne went in while Donnie, Amber, and Donnie's fiancée stayed in Donnie's car. While appellant and his friends were in the store, two police cars pulled into the lot, and the two officers entered the Dunkin Donuts. The officer/victim was in an excited state of mind, his girlfriend having just accepted his marriage proposal. As the officers entered, appellant and his friends were talking with their acquaintance who worked at the shop. A Dunkin Donuts patron described appellant as loud but not obnoxious, and testified the "guy behind the counter," appellant, Fred, and Dianne were laughing a lot, but not being annoying.

When the officers came in the store they did not get in line to make a purchase but rather, according to the patron, "stood

side by side in the entrance." When Fred, Dianne, and appellant left the Dunkin Donuts carrying coffee, the officers followed them because, the surviving officer testified, the victim wanted to ask appellant some questions. Appellant followed Fred and Dianne to their car, where he received a cup of coffee which he then took towards Donnie's car to give to Amber. As he walked between the cars, the victim asked appellant for identification. The other officer, who had gone to talk to Fred, observed this exchange and testified that the victim and appellant "were just engaged in a regular conversation. It seemed real laid back." According to this officer, appellant appeared friendly, not upset or agitated. The victim then "called in" appellant's identifying information, and learned there were no warrants outstanding for appellant's arrest.

Amber testified she then observed appellant raise his hands, at which point the victim pulled out his gun. The victim, gun pulled, followed appellant to the back of the car where, Amber testified, she heard what sounded like hands being placed on the back of the car, followed by a single gun shot. Other shots followed. Dianne observed much the same scene, but testified the victim was yelling "freeze" as he pulled his gun on appellant. Appellant then raised his hands. According to Dianne, the officer then holstered his gun and followed appellant around the back of the car, grabbing appellant and getting "on his back." Dianne clarified that the victim jumped on appellant's back, and a struggle ensued. At this point, according to Dianne and the other officer, appellant shot the victim in the face with a gun appellant had on his person. The other officer on the scene testified that at the juncture when the victim grabbed appellant from behind by the wrist and neck/shoulder area, appellant was not under arrest but remained "free to leave." He also testified that he heard the victim saying to appellant "Show me your hands" as he followed appellant towards the back of the car, but not all witnesses testified that they heard this command.

After the victim was shot in the face at close range, the other officer and appellant exchanged gunfire before appellant and Amber drove off in Donnie's car. Donnie and his fiancée had escaped from the car when appellant jumped in after the shooting began, and Amber had moved to the driver's seat.

The victim died from a combination of blood loss and a concussive injury to the spinal cord which the pathologist testified "could certainly cause immediate incapacitation." When appellant was arrested in Donnie's car later that night, he was found to have been shot as well. The victim's gun was recovered at the scene, as was a cartridge from a bullet fired from that gun. Based on the pathologist's testimony that the bullet which killed the victim may have rendered him instantly incapacitated, appellant contends that the jury could have concluded that the victim was the first to fire his gun since, had appellant shot him first, the victim would have lost the ability to operate his weapon. At least two eyewitnesses, however, reported seeing appellant shoot first.

Appellant's request for a charge on voluntary manslaughter was predicated on this Court's decision in *State v. Linder*, 276 S.C. 304, 278 S.E.2d 335 (1981), which held in part "The killing [of a law enforcement officer] may be only manslaughter where a legal arrest is attempted in an unlawful manner, as when the passion of the accused is aroused by employment of unnecessary violence." All parties agreed that the victim had the right to question appellant, and to ask for his license. All agreed, as well, that appellant had the right to refuse these requests, a right which he did not exercise until after answering questions, showing his identification, and raising his hands.

The parties and the judge disagree whether, after raising his hands as instructed by the officer, appellant had the right to walk away as he did, or whether, as the trial court ruled, at that point one must necessarily infer that the officer saw appellant's gun tucked in his pants, and that this observation elevated the officer's right to conduct a *Terry* stop into a basis for appellant's arrest. The defense argued there was no evidence from which a jury could infer the officer had seen a gun, that is, the officer never said he saw a gun on appellant, nor was there evidence that when appellant raised his arms, that the waist of his pants (and the gun presumably tucked in it) was visible. Appellant contended the court erred in assuming a fact not in evidence in order to hold that the victim had probable cause to arrest appellant as he turned and walked away. Ultimately, the judge denied the voluntary manslaughter charge based on *Linder's* holding that a "lawful arrest or detention" in a "lawful manner" cannot constitute sufficient

legal provocation. He ruled that, as a matter of law, the victim acted in a lawful manner in attempting to effectuate the lawful arrest of appellant, whom it must be assumed the victim knew to be armed.

Appellant contends the trial court erred, and we agree. It is certainly permissible to infer, as did the trial judge, that the victim acted as he did because he observed a gun in appellant's possession. On the other hand, as the defense argues, an alternative and reasonable inference was that the victim reacted in an impermissibly aggressive manner, physically assaulting and then shooting appellant when he exercised his constitutional right to walk away. Unlike the trial judge, we do not find the evidence is susceptible of only one inference, and we hold he erred by holding that, as a matter of law, the victim was effectuating a lawful arrest in a lawful manner when he tackled appellant from behind.[3] The evidence in this case presented a jury question whether the arrest was lawful but effectuated through the victim's unnecessary use of violence, thereby entitling appellant to a voluntary manslaughter charge under *Linder*.

## CONCLUSION

Since the evidence, viewed in the light most favorable to appellant, warranted a voluntary manslaughter charge, appellant's murder conviction and his death sentence are

**REVERSED.**

MOORE, WALLER and BEATTY, JJ., concur.

TOAL, C.J., dissenting in a separate opinion.

Chief Justice TOAL, dissenting:

I respectfully dissent. I would affirm Appellant's conviction and hold that there is no evidence supporting a voluntary manslaughter charge.

---

3. We are confident that the victim's acts are explained by his knowledge that appellant was a suspect in a murder case and therefore likely to be armed. The jury, however, heard no evidence of this other crime and thus it cannot be used to bolster the lawfulness of appellant's detention or the victim's use of force in determining whether the evidence warranted a voluntary manslaughter charge.

Voluntary manslaughter is the unlawful killing of a human being in the sudden heat of passion upon a sufficient legal provocation. *State v. Childers*, 373 S.C. 367, 373, 645 S.E.2d 233, 236 (2007). In cases involving the killing of a police officer, the general rule is:

A lawful arrest or detention in a lawful manner by an officer ... will not constitute an adequate provocation for heat of passion reducing the grade of the homicide to manslaughter; nor will other lawful acts of officers while in the discharge of their duties constitute adequate provocation ... The killing [of a police officer] may be only manslaughter where a legal arrest is attempted in an unlawful manner, as when the passion of the accused is aroused by the employment of unnecessary violence.

*State v. Linder*, 276 S.C. 304, 308, 278 S.E.2d 335, 337 (1981) (quoting 40 C.J.S. *Homicide* 116 (2007)). However, [w]here there are no actions by the deceased to constitute legal provocation, a charge on voluntary manslaughter is not required. *State v. Wood*, 362 S.C. 135, 142, 607 S.E.2d 57, 60 (2004).

In my view, the majority errs in holding that the record contained evidence of sufficient legal provocation entitling Appellant to a voluntary manslaughter charge. Specifically, I would hold that the trial court correctly ruled that there was no evidence that the police officer shot Appellant first. While the pathologist speculated that the bullet *may* have rendered the police officer instantly incapacitated, the record reveals that the only evidence from the witnesses was that Appellant fired the first shot. Moreover, although Amber testified that she saw the police officer draw his gun and follow Appellant behind the car, she explicitly stated that she could not see if Appellant pulled a gun or who fired the first shot.[1] Accordingly, I would hold that there was no evidence of sufficient legal provocation, and therefore, Appellant was not entitled to a voluntary manslaughter charge.

---

4. The trial court refused to give a voluntary manslaughter charge as well as a self-defense charge based on the trial court's ruling that there was no evidence that the police officer fired the first shot.

For these reasons, I would hold the trial court properly refused Appellant's request for a voluntary manslaughter charge.