687 S.E.2d 21

**The STATE, Respondent,**

**v.**

**Quincy Jovan ALLEN, Appellant.**

**No. 26743.**

Supreme Court of South Carolina.

Heard Sept. 15, 2009.

Decided Nov. 16, 2009.

Rehearing Denied Dec. 17, 2009.

94

Acting Chief Appellate Defender Robert M. Dudek, and Appellate Defender Katherine H. Hudgins, both of Columbia, for Appellant.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, and Solicitor Warren B. Giese, of Columbia, for Respondent.

Justice WALLER.

Appellant, Quincy Jovan Allen, pleaded guilty to two counts of murder, one count of assault and battery with intent to kill (ABIK), one count of arson in the second degree, two counts of arson in the third degree, and one count of pointing and presenting a firearm. After a sentencing hearing conducted by the trial judge,[1] Allen was sentenced to death for the murders, twenty years for ABIK, twenty-five years for arson in the second degree, ten years for each count of third degree arson, and five years for pointing and presenting a firearm. He appeals the trial court's imposition of a death sentence.

## FACTS

At approximately 3:00 a.m. on July 7, 2002, Quincy Allen approached a homeless man, fifty-one year old James White, who was lying on a swinging bench in Finlay Park in down-

---

1. S.C.Code Ann. 16–3–20(b) requires, in a capital trial, that "[i]f trial by jury has been waived by the defendant and the State, or if the defendant pleaded guilty, the sentencing proceeding must be conducted before the judge."

town Columbia. Allen ordered White to stand up, and proceeded to shoot him in the shoulder. When White fell back to the bench, Allen ordered him to stand up and shot him again. According to Allen's subsequent statement to police, he had just gotten the shot-gun and he used White as a practice victim because he did not know how to shoot the gun. White survived the assault.

A few days later, on July 10, 2002, Allen met a prostitute named Dale Hall on Two Notch Road in Columbia; he took her to an isolated dead end cul-de-sac near I–77 where he shot her three times with a 12 gauge shotgun, placing the shotgun in her mouth as she pleaded for her life. After shooting her, Allen left to purchase a can of gasoline, and came back to douse Hall's body and set her on fire. He then went back to work at his job at the Texas Roadhouse Grill restaurant on Two Notch Road.

Several weeks later, on August 8, 2002, while working at the restaurant, Allen got into an argument with two sisters, Taneal and Tiffany Todd; he threatened Tiffany, who was then 12 weeks pregnant, that he was going to slap her so hard her baby would have a mark on it. Tiffany's boyfriend Brian Marquis came to the restaurant, accompanied by his friend Jedediah Harr. After a confrontation, Allen fired his shotgun into Harr's car, attempting to shoot Marquis; however, Allen missed Marquis and instead hit Harr in the right side of the head. As the car rolled downhill, Marquis jumped out and ran into a nearby convenience store, where he was hidden in the cooler by an employee. Allen left the convenience store, and went and set fire to the front porch of Marquis' home. A few hours later Allen set fire to the car of Sarah Barnes, another Texas Roadhouse employee. Harr died of the shotgun blast to his head.

The following day, Allen set fire to the car of another man, Don Bundrick, whom he apparently did not know. Later that evening, August 9, 2002, Allen went to a strip club, Platinum Plus, in Columbia, where he pointed his shotgun at a patron. Allen left South Carolina and proceeded to New York City. On his way back, while in North Carolina, Allen shot and killed two men at a convenience store in Surrey County.[2] Allen then

---

2. Allen pleaded guilty to those murders in 2004 and was sentenced to life in prison.

went to Texas, where he was apprehended by law enforcement on August 14th.

Allen gave statements to police outlining the details of his crimes. He told police he began killing people because an inmate in federal prison, where Allen spent time for stealing a vehicle, had told him he could get him a job as a mafia hit man. Allen got tired of waiting and embarked on his own killing spree. Allen told police he would have killed more people if he had had a handgun, but his prior record prohibited him from obtaining a handgun.

## ISSUES

1. Did the sentencing court commit reversible error in commenting on the deterrent effect a sentence of death might have on abusive mothers?

2. Did the sentencing court commit reversible error in failing to designate a finding of a specific statutory aggravating circumstance?

3. Did the sentencing court err in failing to find S.C.Code Ann. 16–3–20(b) unconstitutional as violating the Eighth and Fourteenth Amendments?

## 1. DETERRENT EFFECT COMMENTS

At his guilty plea, Allen admitted to the facts as recited by the solicitor, essentially those set out above. At sentencing, the state was required to establish its aggravating circumstances, and Allen put up a case in mitigation of punishment. At the conclusion of the sentencing hearing, Judge Cooper stated:

In considering the outcome of this sentencing hearing I have tried to understand the unique forces and events which have put Mr. Allen in the situation in which he finds himself today. I have considered his upbringing so masterfully chronicled by Deborah Grey.[3] I've considered his list of mental illnesses . . .

---

3. Ms. Grey is a licensed clinical social worker who performed a bio/psycho/social history and a risk assessment of his mental illness factors for the defense.

I've considered the facts of the various murders that Mr. Allen does not deny. I've considered the impact to James White, to Dale Hall's family and to the Harr family. I've also considered the effect of this trial on Quincy Allen's two younger brothers who have sat through the majority of this trial. And I have considered the passionate arguments of counsel on both sides of this case. . . .

The trial court gave a lengthy discourse as to the reasons he felt a death sentence was warranted under the circumstances of this case. In concluding the death sentence was appropriate, the judge stated:

So I come to the consideration of the factors which should control a death penalty sentence: retribution and deterrence. Retribution in a sense is the easiest. Considering the fear Mr. Allen struck into the heart of James White and the subsequent shooting of James White for practice, I find retribution appropriate.

Considering the fear Mr. Allen struck into the heart of Dale Hall, the absolute depravity of her murder, and the subsequent burning of her body, I find retribution appropriate.

Considering the callous killing of Jedediah Harr and the subsequent stalking of Brian Marquis for the purpose of killing him, I find retribution appropriate.

And how could Quincy Allen's death serve as a deterrent to others, to the abused and neglected young people of this community? Maybe it will make some young man or some young girl stop and think about the results of destructive behavior.

**Hopefully, hopefully, it will make some young mother, single or otherwise, think about the love and care that children need, no matter how tough the circumstances, and would deter that mother from making the same horrible choices made with Quincy Allen. I would hope that this sentence has at least that deterrent effect,** but we may never know.

I find that, pursuant to Section 16–3–20 of the [S.C.Code], the death penalty is warranted under the evidence in this case, and is not the result of passion, prejudice or any other factor.

(emphasis supplied). Allen now contends the highlighted language above demonstrates that the trial court imposed a sentence of death to serve as a deterrent to abusive parents and constitutes an arbitrary factor in violation of the Eighth Amendment. We disagree.

It is clear from reading the entirety of the trial court's sentencing order, along with the written sentencing report, that the death sentence was based upon the characteristics of Allen and the circumstances of the crime, such that the penalty is warranted; accordingly, we find no reversible error.

■ Evidence in the sentencing phase of a capital trial must be relevant to the character of the defendant or the circumstances of the crime. *State v. Copeland,* 278 S.C. 572, 300 S.E.2d 63 (1982). A death sentence resulting from passion, prejudice, or any other arbitrary factor constitutes an Eighth Amendment violation. U.S. Const. Amend. 8. *See also* S.C.Code Ann. § 16–3–25(C)(1) (requiring a death sentence be free from the influence of any arbitrary factor); *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392, (1980).

■ The justifications supporting imposition of the death penalty are retribution and deterrence. *See Gregg v. Georgia,* 428 U.S. 153, 183, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). With respect to deterrence, i.e., the interest in preventing capital crimes by prospective offenders, "it seems likely that capital punishment can serve as a deterrent only when murder is the result of premeditation and deliberation." *Enmund v. Florida,* 458 U.S. 782, 799, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). Although evidence concerning the effectiveness and propriety of capital punishment as an instrument of deterrence is irrelevant and should not be admitted, *State v. Plath,* 281 S.C. 1, 313 S.E.2d 619 (1984), *cert. denied,* 467 U.S. 1265, 104 S.Ct. 3560, 82 L.Ed.2d 862 (1984), general deterrence arguments are admissible in the penalty phase of a capital trial and do not inject an arbitrary factor into the jury's consideration. *State v. Shuler,* 353 S.C. 176, 577 S.E.2d 438 (2003); *State v. Shafer,* 340 S.C. 291, 531 S.E.2d 524 (2000), *overruled on other grounds* 532 U.S. 36, 121 S.Ct. 1263, 149 L.Ed.2d 178(2001).

■ We do not find the trial court's imposition of the death sentence in this case to be the result of any arbitrary factor. In reading the entirety of the court's colloquy, it is clear that the sentence was premised primarily on retribution to this particular defendant, and the fact that the murders were deliberate, premeditated and cruel. The trial court commented on the way Allen put a shotgun to Dale Hall's mouth and pulled the trigger, then went to the gas station, bought gas, and went back and burned her body. He commented on the fact that Allen changed the load in his shotgun to hollow point slugs to make it more destructive. He commented on the fact that it was Allen's intention to become a serial killer in order to garner respect. He commented on the fact that Allen told people he would kill again if given the opportunity. He commented on the fact that Allen then left the state and went and committed more murders in North Carolina.

Notwithstanding the trial court's isolated comment concerning deterrence to abusive parents, it is patent the sentence does not rest on this ground and was not imposed due to an arbitrary factor. Accordingly, the sentence is affirmed.

## 2. STATUTORY AGGRAVATING FACTOR

At the conclusion of the sentencing phase, the trial court stated:

After carefully considering all relevant facts and circumstances, including the existence of statutory aggravating circumstances as well as the claim of mitigating circumstances, this Court finds and concludes that the defendant shall be sentenced to death by electrocution or lethal injection as set forth in S.C.Code Ann. § 24–3–530.

Allen now contends the trial court's failure, in its oral ruling, to designate the **specific aggravating circumstances** warranting imposition of the death penalty requires the sentence to be vacated. We find this contention meritless.

The trial court's **written sentencing report** sets forth the following findings of aggravating circumstances:

Victim Dale Hall: Kidnapping, Larceny with use of a deadly weapon, Physical torture, murder committed by person with prior conviction for murder

Victim Jedediah Harr: Murder committed by person with prior conviction for murder, knowingly creating a great risk of death to more than one person in a public place by means of a weapon or device which would normally be hazardous to more than one person.

Accordingly, Allen's contention that the trial court failed to set forth specific statutory aggravating circumstances is meritless and the sentence was imposed in compliance with S.C.Code Ann. § 16–3–20(C). *State v. Chaffee*, 285 S.C. 21, 328 S.E.2d 464 (1984), *overruled on other grounds State v. Torrence*, 317 S.C. 45, 451 S.E.2d 883 (1994) (death penalty may be imposed upon finding at least one statutory aggravating factor).

### 3. EIGHT AND FOURTEENTH AMENDMENTS

Finally, Allen contends the trial court erred in failing to declare S.C.Code Ann. § 16–3–20[4] violates the Eight and Fourteenth Amendments to the United States Constitution by denying him the right to plead guilty while maintaining the right to have a jury determine his sentence. He contends the issue he raises is distinguishable from the **Sixth** Amendment claims repeatedly rejected by this Court. *State v. Crisp*, 362 S.C. 412, 608 S.E.2d 429 (2005); *State v. Downs*, 361 S.C. 141, 604 S.E.2d 377 (2004); *State v. Wood*, 362 S.C. 135, 607 S.E.2d 57 (2004). Essentially, he claims the **effect** of denying him a jury at the sentencing phase deprives him of the opportunity to present mitigating evidence (i.e., that he accepts his guilt) to a jury of his peers, and therefore violates due process under the Fourteenth Amendment, resulting in cruel and unusual punishment in violation of the Eighth Amendment.[5] We find no constitutional violation.

This Court has found, in capital cases in which the defendant pleads guilty, that statutorily mandated sentencing by the trial judge does not violate the United States Supreme

---

4. Section 16–3–20 requires that, in a capital proceeding in which the defendant pleads guilty, the sentencing proceeding must be conducted before the judge.

5. U.S. CONST. Amend VIII (excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted); US CONST. Amend XIV (state shall not deprive any person of life, liberty, or property, without due process of law).

Court's opinion in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).[6] *Downs*, 361 S.C. at 146–147, 604 S.E.2d at 380. Subsequent to *Downs*, the defendant in *Crisp* attempted to distinguish *Downs* contending that, unlike Downs, Crisp sought a life sentence and exhibited remorse for his crimes, as well as claiming that he murdered the victims in fear for his life. We rejected Crisp's attempt to distinguish *Downs*, stating, "[t]he constitutionality of Section 16–3–20(B) **does not rest on a defendant's desire for a particular outcome, his sense of remorse,** or his rationale for committing a particular crime. Instead, it rests, *inter alia*, on whether the statute comports with the right to a jury trial as established by this Court and the United States Supreme Court in interpreting the state and federal constitutions." 362 S.C. at 418–419, 608 S.E.2d at 433 (emphasis added). *See also State v. Wood*, 362 S.C. 135, 607 S.E.2d 57 (2004).

Contrary to Allen's assertion, the statute's requirement that the trial court conduct the sentencing does not deprive him of due process, nor does it result in cruel and unusual punishment. S.C.Code Ann. § 16–3–20(C) requires that, in capital sentencing proceedings conducted by the judge alone, the judge consider any mitigating circumstances allowed by law and must also consider the enumerated statutory aggravating and mitigating circumstances. Although Allen would suggest otherwise, he was indeed permitted to offer evidence of his remorse, and his acceptance of responsibility, to the trial court. Further, the trial court was **required** to receive evidence in extenuation, mitigation, and aggravation of punishment, and was required to find the existence of statutory aggravating circumstances beyond a reasonable doubt prior to imposing a sentence of death. S.C.Code Ann. § 16–3–20(B) & (C).

Contrary to Allen's contention, the sentencer was not precluded from considering, as a mitigating factor, that he accepted responsibility and showed remorse.[7] Allen's Eight and Fourteenth amendment claims are without merit.

---

6. *Ring* held an Arizona statute which required the trial judge to find existence of statutory aggravating circumstances, after jury had found defendant guilty, violated the Sixth Amendment right to a jury trial.

7. Moreover, we are not persuaded by Allen's claim that, had he proceeded to trial on the issue of guilt or innocence, he would have been

## CONCLUSION

██ We find the trial court's imposition of a death sentence was proper, and was supported by the statutory aggravating circumstances. Further, pursuant to the mandatory review provision of S.C.Code Ann. § 16–3–25 (2003), we find the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor, and the sentence is proportionate to sentences imposed under similar situations. *State v. Evins*, 373 S.C. 404, 645 S.E.2d 904 (2007) (death sentence warranted where defendant was convicted of murder, kidnapping, criminal sexual assault, and grand larceny); *State v. Simmons*, 360 S.C. 33, 599 S.E.2d 448 (2004) (death sentence upheld where jury found aggravating factors of criminal sexual conduct, kidnapping, armed robbery, physical torture, and burglary); *State v. Shuler*, 353 S.C. 176, 577 S.E.2d 438 (2003) (death sentence warranted for two counts of murder, burglary and physical torture); *State v. Whipple*, 324 S.C. 43, 476 S.E.2d 683 (1996) (death sentence upheld where defendant was convicted of murder, criminal sexual conduct, armed robbery, and grand larceny of a motor vehicle); *Ray v. State*, 330 S.C. 184, 498 S.E.2d 640 (1998) (imposing death sentence for murder with aggravating circumstance of kidnapping).

**AFFIRMED.**

TOAL, C.J., PLEICONES, BEATTY and KITTREDGE, JJ., concur.

---

unable to convey to the jury his acceptance of guilt and sense of remorse.